F.F.P. OPERATING PARTNERS,
L.P., d/b/a Mr. Cut Rate
# 602, Petitioner,

v.

Xavier DUENEZ and Wife Irene Due-
nez, As Next Friends of Carlos Due-
nez and Pablo Duenez, Minors, Re-
spondents.

No. 02–0381.

Supreme Court of Texas.

Argued Nov. 30, 2005.

Decided May 11, 2007.

Oscar H. Villarreal, Villarreal Moreno &
Ruiz, San Antonio, Gregory J. Lensing,
Cowles Thompson, Dallas, Arthur C. Rey-
na Jr., San Antonio, Glen Garey, Austin,
James E. Rensimer, Markle & Ramos,

Houston, TX, Victor E. Schwartz, Emily J. Laird, Manuel Lopez, Shook, Hardy & Bacon L.L.P., Washington, DC, Edward J. Murphy, Beirne, Maynard & Parsons, L.L.P., Houston, E. Lee Parsley, E. Lee Parsley, P.C., Austin, Grant E. Adami III, Adami Goldman & Shuffield, San Antonio, TX, for Amicus Curiae.

Russell H. McMains, Law Offices of Russell H. McMains, Corpus Christi, Reagan W. Simpson, King & Spalding LLP, Houston, Mike A. Hatchell, Locke Liddell & Sapp, LLP, Austin, TX, for Petitioner.

David Roberts, Wanda Roberts, Garner, Roberts & Roberts, L.L.P., Port Lavaca, Christa Brown, Austin, Cynthia T. Sheppard, Attorney At Law, Cuero, David C. Griffin, John W. Griffin Jr., Houston, Marek & Griffin, L.L.P., Victoria, TX, for Respondent.

Justice WAINWRIGHT delivered the opinion of the Court, in which Justice HECHT, Justice BRISTER, Justice MEDINA, Justice GREEN, Justice JOHNSON and Justice WILLETT joined.

On December 12, 2002, we granted this petition for review, and on September 3, 2004, the Court issued an opinion. On April 8, 2005, we granted the petitioner's motion for rehearing, reargued the case, and issued an opinion on November 3, 2006. Today we deny the respondents' motion for rehearing. We withdraw our opinion of November 3, 2006 and substitute the following in its place.

We are asked to revisit our holding in *Smith v. Sewell* that the proportionate responsibility scheme of chapter 33 of the Texas Civil Practice and Remedies Code requires an apportionment of responsibility under chapter 2 of the Alcoholic Beverage Code. 858 S.W.2d 350 (Tex.1993). We decline the invitation to reverse *Sewell* and instead affirm its holding that the language of the proportionate responsibility statute includes claims under the Dram Shop Act. Neither the purpose nor the language of the Act makes a dram shop automatically responsible for all of the damages caused by an intoxicated patron, regardless of a jury's determination of the dram shop's proportion of responsibility. Instead, pursuant to Chapter 33, a dram shop is responsible for its proportionate share of the damages as determined by a jury. Accordingly, we reverse the court of appeals' judgment and remand the case for a new trial.

## I. Factual and Procedural Background

After spending the day cutting firewood while consuming a case and a half of beer, Roberto Ruiz drove his truck to a Mr. Cut Rate convenience store owned by F.F.P. Operating Partners, L.P. and purchased a twelve-pack of beer. The store's assistant manager, Carol Solis, sold the beer to Ruiz. Ruiz then climbed into his truck, opened a can of beer, and put the open beer can between his legs. There was conflicting testimony about whether Ruiz actually drank any of the beer that he purchased at Mr. Cut Rate.

Ruiz then drove onto a nearby highway and swerved into oncoming traffic several times. Two cars dodged his truck to avoid a collision. As he crossed a bridge approximately a mile and a half from the Mr. Cut Rate convenience store, Ruiz swerved across the center line, hitting the Duenezes' car head-on. All five members of the Duenez family suffered injuries.

Ruiz was arrested at the accident scene for drunk driving. He pled guilty to intoxication assault and was sentenced to prison. The Duenezes brought a civil suit against F.F.P., Ruiz, Solis, Nu–Way Beverage Company, and the owner of the land where Ruiz had spent the afternoon cutting firewood and drinking. F.F.P. filed a cross-action against Ruiz, naming him as a

responsible third-party and a contribution defendant. The Duenezes thereafter non-suited all defendants except F.F.P.

At the pretrial conference, the Duenezes obtained a partial summary judgment that chapter 33 of the Texas Civil Practice and Remedies Code, the proportionate responsibility statute, did not apply to this case. The trial court then severed F.F.P.'s cross-action against Ruiz, leaving F.F.P. as the only defendant for trial. F.F.P.'s severed action against Ruiz remains pending in the trial court.

The Duenezes' claim against F.F.P. proceeded to trial. At the charge conference, the trial court refused to submit questions for determination of Ruiz's negligence. The court also failed to submit questions on the proportionate responsibility of Ruiz and F.F.P.

The jury found that when the alcohol was sold to Ruiz, it was "apparent to the seller that he was obviously intoxicated to the extent that he presented a clear danger to himself and others," and that Ruiz's intoxication was a proximate cause of the collision. The jury returned a $35 million verdict against F.F.P., upon which the trial court rendered judgment.

The court of appeals affirmed the trial court's judgment, holding:

> [I]n third-party actions under the Dram Shop Act in which there are no allegations of negligence on the part of the plaintiffs, a provider is vicariously liable for the damages caused by an intoxicated person, and such a provider is not entitled to offset its liability by that of the intoxicated person.

69 S.W.3d 800, 805. In reaching that conclusion, the court distinguished our decision in *Sewell*, in which we held that the comparative responsibility statute applied to dram-shop causes of action. *Id.* The court of appeals concluded that *Sewell's* holding was limited to first-party actions in which the intoxicated patron is suing for his own injuries and is inapplicable when the plaintiff is an innocent third party injured by an intoxicated patron. *Id.* at 805–06. The court also held that the trial court did not abuse its discretion in severing F.F.P.'s contribution claim against Ruiz, concluding that because F.F.P.'s statutory liability was vicarious and not direct, F.F.P. had an indemnity claim rather than a contribution claim against Ruiz. *Id.* at 807–08.

We granted F.F.P.'s petition for review. While the petition was pending, Xavier, Irene, and Ashley Duenez settled their claims against F.F.P. Only the claims of Pablo and Carlos Duenez against F.F.P. remain before the Court.

## II. Statutory Interpretation

■ Statutory construction is a legal question that we review de novo, ascertaining and giving effect to the Legislature's intent as expressed by the plain and common meaning of the statute's words. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex.2004).

### A. The Dram Shop Act

■ The Legislature enacted the Dram Shop Act to "deter providers of alcoholic beverages from serving alcoholic beverages to obviously intoxicated individuals who may potentially inflict serious injury on themselves and on innocent members of the general public." *Sewell*, 858 S.W.2d at 356. Section 2.02 of the Alcoholic Beverage Code sets forth the scope and elements of this action:

> (a) This chapter does not affect the right of any person to bring a common law cause of action against any individual whose consumption of an alcoholic beverage allegedly resulted in causing the person bringing the suit to suffer personal injury or property damage.

> (b) Providing, selling, or serving an alcoholic beverage may be made the ba-

sis of a statutory cause of action under this chapter and may be made the basis of a revocation proceeding under section 6.01(b) of this code upon proof that:

(1) at the time the provision occurred it was apparent to the provider that the individual being sold, served, or provided with an alcoholic beverage was *obviously intoxicated* to the extent that he presented a *clear danger* to himself and others; and

(2) the intoxication of the recipient of the alcoholic beverage was a proximate cause of the damages suffered.

TEX. ALCO. BEV.CODE § 2.02 (emphasis added).[1] If a plaintiff meets the "onerous burden of proof" imposed by the Dram Shop Act, then the provider is liable for damages proximately caused by its employees or patrons. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 314 (Tex.1987); *see also* TEX. ALCO. BEV.CODE § 2.03.[2] In the Dram Shop Act, the Legislature created a duty, not recognized at common law, on alcohol providers and increased the potential liability of providers as a means of deterring providers from serving obviously intoxicated individuals. Historically, the "rule of non-liability" held that an alcohol provider owed no duty to third persons for injuries caused by the provision of alcohol. *Sewell*, 858 S.W.2d at 352; *Poole*, 732 S.W.2d at 310; *see also* Joel Smith, Annotation, *Common–Law Right of Action for Damages Sustained by Plaintiff in Consequence of Sale of Gift of Intoxicating Liquor or Habit–Forming Drug to Another*,

97 A.L.R.3d 528 (1980). Providers also were generally able to avoid liability because the consumption of alcohol, rather than its provision, was considered the sole proximate cause of injury to the patron and third persons. *Poole*, 732 S.W.2d at 309. Finally, even if the sale was a proximate cause of intoxication, injury was considered to be an unforeseeable result of the patron's intoxication. *Id.* The common law effectively precluded dram shops from incurring liability when their intoxicated patrons caused injury to third parties. *Id.; see also Mata v. Schoch*, 337 B.R. 135, 136 (Bankr.S.D.Tex.2005).

Relying on "modern analysis," in 1987 the Court in *Poole* discarded the "absolute rule of no liability" and imposed a duty on a dram shop not to serve alcoholic beverages to a person it knows or should know is intoxicated. *Poole*, 732 S.W.2d at 310. For the first time, the Court held that a provider of alcohol is negligent as a matter of law when he knowingly sells an alcoholic beverage to an intoxicated person, and the Court relaxed the standards for proving proximate cause and foreseeability. *Id.* at 313–14. The claimant was still required to prove that the dram shop's conduct was the proximate cause of his or her injury to recover. *Id.* at 313.

The Legislature . acted to address the problem of providers' excessive provision of alcohol to patrons. A week after this Court issued *Poole*, the Dram Shop Act became effective and narrowed potential liability from *Poole* in several ways. *See id.* First, it made the Act the exclusive

---

1. The Legislature has amended much of the code applicable to this case. For clarity, the text references the codified version of the statutes applicable to the case as current law with the full citation appearing in footnotes. Citations without clarifying footnotes refer to the version in effect on the date of this opinion.

Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3, 1987 Tex. Gen. Laws 1673, 1674, *amended by* Act of June 17, 2005, 79th Leg.,

R.S., ch. 643, § 1, 2005 Tex. Gen. Laws 1617, 1617 (current version at TEX. ALCO. BEV.CODE § 2.02).

2. Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3, 1987 Tex. Gen. Laws 1673, 1674, *amended by* Act of June 20, 2003, 78th Leg., R.S., ch. 456, § 1, 2003 Tex. Gen. Laws 1698, 1698–99 (current version at TEX. ALCO. BEV. CODE § 2.03(a)).

means of pursuing a dram shop for damages for intoxication. TEX. ALCO. BEV.CODE § 2.03.[3] Second, as an element of liability, the patron must be *"obviously* intoxicated," not just intoxicated, when the dram shop serves him alcohol. *Id.* § 2.02 (emphasis added).[4] Third, under Chapter 2, "the intoxication of the recipient must be a proximate cause of the damages." *Sewell,* 858 S.W.2d at 355 (citing TEX. ALCO. BEV. CODE § 2.02(b)).

The common foundation of both CHIEF JUSTICE JEFFERSON's and JUSTICE O'NEILL's dissents is the contention that the Legislature abolished the element of proximate cause for a third party to recover from a dram shop and replaced it with "a form of vicarious liability," as CHIEF JUSTICE JEFFERSON labels it, or "imputed liability," as JUSTICE O'NEILL terms it. The dissenters contend that once the dram shop provides alcohol to an obviously intoxicated patron, it becomes responsible for all subsequent injuries caused by the patron's intoxication. This assumption forms the basis of their conclusions that submitting a proportionate liability question to the jury does not change the dram shop's joint and several liability for all of the damages. For example, even if the patron consumed none of the alcohol purchased from the dram shop, the dissenters would hold the provider liable for all the injuries caused by the patron to third parties. The statutes do not support their approaches, which would nullify the effect of the expansive language in the proportionate responsibility statute.

The dissenters contend that the failure to read vicarious or imputed liability into the Act undermines the legislative purpose. On the contrary, the Act accomplishes the objective of deterring the sale of alcohol to obviously intoxicated persons in several ways. The Act provides a previously foreclosed remedy against sellers of alcohol. And unlike the prior common law, dram shops now owe a duty to patrons and injured third parties under specified circumstances and can be subject to civil liability for the damages they proximately cause. *Compare Poole,* 732 S.W.2d at 309 *with Sewell,* 858 S.W.2d at 355. The Legislature also deterred irresponsible conduct by providing that a dram shop's alcohol license is subject to revocation for violating the Act. TEX. ALCO. BEV. CODE § 2.02(b).[5]

JUSTICE O'NEILL finds the imposition of imputed liability on providers in a single phrase in Section 2.03 of the Act, set out in italics: "The *liability of providers under this chapter for the actions of their customers, members, or guests who are or become intoxicated* is in lieu of common law or other statutory law warranties and duties of providers of alcoholic beverages." 237 S.W.3d at 704; TEX. ALCO. BEV.CODE § 2.03.[6] Although JUSTICE O'NEILL states that Chapter 33 applies, she nevertheless concludes that "the dram shop is liable to injured third parties for both its own actions and for its patron's share of responsibility." 237 S.W.3d at 709. She borrows support for this position from section 7 of the Restatement of Torts: a party to whom liability is imputed and who is also independently liable "is responsible for the share of the verdict assigned to [the party whose liability is imputed] and is also responsible for the share of the verdict as-

---

3. Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3, 1987 Tex. Gen. Laws 1673, 1674 (amended 2003).

4. Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3, 1987 Tex. Gen. Laws 1673, 1674 (amended 2005).

5. Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3, 1987 Tex. Gen. Laws 1673, 1674 (amended 2005).

6. Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3, 1987 Tex. Gen. Laws 1673, 1674 (amended 2003).

signed to its own negligence." *Id.* at 710; *see also* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 7 cmt. j (2000) (stating that "[t]he employer is responsible for the share of the verdict assigned to the employee and is also responsible for the share of the verdict assigned to its own negligence"). The common law has been supplanted by statute and Section 7 is not the law on this issue in Texas. The Proportionate Responsibility Act and the Dram Shop Act govern this issue.

■ JUSTICE O'NEILL insists that the Legislature intended the phrase "the liability of providers under this chapter for the actions of their customers," to mean that providers under this chapter *are liable* for the actions of their customers. 237 S.W.3d at 710; TEX. ALCO. BEV.CODE § 2.03.[7] The statute can mean this only if words not in the text are inserted. Read as written, in context, Section 2.03 simply means that the Dram Shop Act provides the exclusive remedy against an alcohol provider for damages caused by an intoxicated patron at least 18 years of age—i.e., common law remedies are no longer available. *See Borneman v. Steak & Ale of Tex., Inc.*, 22 S.W.3d 411, 412 (Tex.2000). We do not read Section 2.03 to say that a provider of alcohol is responsible, without regard to fault, for one hundred percent of the damages caused by an intoxicated patron.

■ CHIEF JUSTICE JEFFERSON seeks to support his position with an analogy to reasoning in vicarious liability theory for negligent entrustment cases. 237 S.W.3d at 697. Generally in Texas, the doctrine of vicarious liability, or respondeat superior, makes a principal liable for the conduct of his employee or agent. *See Baptist Mem. Hosp. Sys. v. Sampson,* 969 S.W.2d 945, 947 (Tex.1998). This liability is based on the principal's control or right to control the agent's actions undertaken to further the principal's objectives. *See Wingfoot v. Alvarado,* 111 S.W.3d 134, 136 (Tex.2003); PROSSER & KEETON ON THE LAW OF TORTS, § 69–70 (W. Page Keeton et al. eds., 5th ed.1984). Should an innocent third party suffer injury at the hands of the agent or employee, the theory is that the enterprise itself, not only the agent, should be held accountable. *See Wingfoot,* 111 S.W.3d at 146; KEETON ET AL., § 69; *see also* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 13 (2000). Here, the patron is not the agent or employee of the dram shop, the provider has no control or right to control the patron, and the patron's actions causing the accident are not in furtherance of the provider's business. The analogy to negligent entrustment, a form of vicarious liability, suffers from similar deficiencies. As the late Dean Prosser explained, the basis for imposing liability on the owner of the thing entrusted to another is that ownership of the thing gives the right of control over its use. KEETON ET AL., § 73; *see Schneider v. Esperanza Transmission Co.,* 744 S.W.2d 595, 596 (Tex.1987) (proving negligence by a theory of negligent entrustment requires establishment of ownership). Hence, an owner may have to answer in damages for negligently exercising her control by entrusting an item to a person who the owner knew or should have known would act in a reckless or incompetent manner. *Schneider,* 744 S.W.2d at 596. Because there is no ownership by the dram shop of the object used by a patron to cause the accident, the vicarious liability doctrine does not support—and the Dram Shop Act does not create—the indemnification scheme proposed by JUSTICE O'NEILL or the vicarious liability scheme that CHIEF

---

7. Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3, 1987 Tex. Gen. Laws 1673, 1674 (amend- ed 2003).

JUSTICE JEFFERSON would create. Their positions expand the theory of vicarious liability beyond its traditional boundaries.

## B. Chapter 33

Chapter 33 of the Texas Civil Practice and Remedies Code governs the apportionment of responsibility in cases within its scope. The 1995 version of the proportionate responsibility scheme applies to this case because the collision that injured the Duenezes occurred in July 1997. At that time, section 33.013 of the Civil Practice and Remedies Code provided, with certain exceptions, that a defendant was liable only for the percentage of responsibility found by the trier of fact, unless the percentage of responsibility exceeded fifty percent. TEX. CIV. PRAC. & REM.CODE § 33.013.[8] If a defendant's percentage of responsibility exceeded fifty percent, that defendant was jointly and severally liable for all of the claimant's recoverable damages. *Id.*

Section 33.003 provided that the factfinder was to compare a defendant's responsibility with the responsibility of the claimant, other defendants, and any responsible third party joined by a defen-

dant. TEX. CIV. PRAC. & REM.CODE § 33.003.[9] The statute required the trier of fact to apportion responsibility

> with respect to each person's causing or contributing to cause in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these....

*Id.* § 33.003(a).

Chapter 33 applied to a broad range of cases, including "any cause of action based on tort in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought" and actions brought under the Texas Deceptive Trade Practices–Consumer Protection Act. *Id.* §§ 33.002(a),[10] (h).[11] Section 33.002(c) expressly excluded from its coverage actions to collect workers' compensation benefits, actions against an employer for exemplary damages arising out of the death of an employee, and claims for exemplary damages included in an action to which this chapter otherwise applies.[12] Section

8. Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3271, *amended by* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.09, 1987 Tex. Gen. Laws 37, 42, *amended by* Act of May 8, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 974, *amended by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 4.07, 4.10(5), 2003 Tex. Gen. Laws 847, 858–59 (current version at TEX. CIV. PRAC. & REM CODE § 33.013).

9. Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.06, 1987 Tex. Gen. Laws 37, 41, *amended by* Act of May 8, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 972, *amended by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 4.02, 2003 Tex. Gen. Laws 847, 855 (current version at TEX. CIV. PRAC. & REM.CODE § 33.003).

10. Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, § 2.05, 1987 Tex. Gen. Laws 37, 41,

*amended by* Act of May 29, 1989, 71st Leg., R.S., ch. 380, § 4, 1989 Tex. Gen. Laws 1490,1492, *amended by* Act of May 8, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971,971–72, *amended by* Act of May 21, 2001, 77th Leg., R.S., ch. 643, § 2, 2001 Tex. Gen. Laws 1208, 1208–09, *amended by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 4, 2003 Tex. Gen. Laws 847, 858–59 (current version at TEX. CIV. PRAC. & REM.CODE § 33.002).

11. Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, § 2.05, 1987 Tex. Gen. Laws 37, 41 (amended 1989, 1995, 2001, repealed 2003).

12. Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, § 2.05, 1987 Tex. Gen. Laws 37, 41 (amended 1989, 1995, 2001, 2003).

33.002(b) excluded application of Chapter 33 to actions for damages caused by a list of intentional criminal acts committed in concert with another person by imposing joint and several liability.[13] Chapter 33 does not specifically exclude the Dram Shop Act.

## C. *Smith v. Sewell*

This Court addressed the applicability of Chapter 33 to the Dram Shop Act in *Smith v. Sewell*, 858 S.W.2d 350 (Tex.1993). When *Sewell* was decided, Chapter 33 provided that it applied "[i]n an action to recover damages for negligence ... or an action for products liability grounded in negligence." TEX. CIV. PRAC. & REM.CODE § 33.001(a).[14] The Court held that the essential elements of a dram-shop action replicated those of a negligence claim, hence Chapter 33 applied to the Act. *Sewell*, 858 S.W.2d at 355–56.

In *Sewell*, the plaintiff became intoxicated at a bar. *Id.* at 351. On his way home, he lost control of his car and was severely injured in a one-car accident. He sued the bar. This Court explicitly recognized that a cause of action against a provider of alcohol is a direct action for the wrongful conduct of the provider: "[L]iability under [the Dram Shop Act] is premised on the conduct of the provider of the alcoholic beverages—not the conduct of the recipient or a third party." *Id.* at 355. The Court reasoned this is true "regardless of whether the intoxicated individual injures himself or a third party." *Id.* The Court then examined the comparative responsibility scheme and its exclusions and concluded that a cause of action against a provider of alcohol was not excluded from the Comparative Responsibility Act, and therefore, the comparative responsibility scheme applied. *Id.* at 356. The Court identified the Legislature's intent, expressed under Chapter 33, as "requir[ing] the trier of fact to determine the percentage of responsibility attributable to *each* of the parties involved in causing the injury." *Id.* (emphasis added). Under the combined effect of both statutes, an intoxicated person "will be entitled to recover damages only if his percentage of responsibility is found to be less than or equal to 50 percent," and any recovery must be reduced by the percentage of the intoxicated individual's responsibility. *Id.* The Court recognized that this interpretation of the statutes ensured a consistent and equitable approach to dram-shop liability, whether the case involved first or third person liability. *Id.*

In this case, the court of appeals held that *Sewell* did not apply to third-party Dram Shop claims like this one. 69 S.W.3d at 805. The court interpreted *Sewell* as limiting an intoxicated patron's recovery against a provider according to the intoxicated person's percentage of responsibility but not imposing similar limitations when a third party seeks recovery against a provider for damages caused by an intoxicated patron's actions. *Id.* Instead, the court of appeals concluded that a provider is vicariously liable for the damages caused by an intoxicated employee or patron in third party actions in which there are no allegations of negligence of the third party.

---

13. Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, § 2.05, 1987 Tex. Gen. Laws 37, 41 (amended 1989, 1995, 2001, repealed 2003).

14. Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3271, *amended by* Act of June 3, 1987, 70th Leg. 1st C.S., ch. 2, § 2.04, 1987 Tex. Gen. Laws 37, 40, *amended by* Act of May 8, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 971 (current version at TEX. CIV. PRAC. & REM. CODE § 33.002). Section 33.001 grounded the applicability of the statute in negligence. However, Section 33.002, added to the code in 1987, is specifically devoted to the applicability of the chapter and is rooted in torts, giving the current law a broader application than that at the time of *Sewell*.

*Id.* The court reasoned that this interpretation is consistent with the Dram Shop Act because the Act imposes liability on the provider for the actions of the intoxicated person, "just as an employer is liable for the damages caused by an employee in the course and scope of the employment." *Id.* at 806 (citations omitted). Thus, the court concluded, "a division of liability would be meaningless: the vicariously liable party is liable for the other party's actions, as though those actions were its own." *Id.*

This is contrary to our opinion in *Sewell,* and rebutted by the deterrent effects of the Act, discussed above. This Court has interpreted the Dram Shop Act to create liability based "on the conduct of the provider of the alcoholic beverages—not the conduct of the recipient or a third party." *Sewell,* 858 S.W.2d at 355. The conduct for which the provider may be held liable is the same conduct "whether the intoxicated individual injures himself or a third party." *Id.* Thus, the premise of the court of appeals' vicarious liability holding—that the provider's liability stems from the conduct of the intoxicated individual instead of the provider's own conduct—runs contrary to both the Dram Shop Act and our interpretation of the Act in *Sewell. Compare Sewell,* 858 S.W.2d at 355, *with* 69 S.W.3d at 806.

The dissents likewise recognize significant problems with their approaches in light of this precedent. They approach the problem of *Sewell* differently. CHIEF JUSTICE JEFFERSON argues that *Sewell* was wrongly decided but nevertheless would keep the holding intact as to first-party claims and create a different rule for third-party claims. 237 S.W.3d at 701. Similarly, JUSTICE O'NEILL would limit *Sewell's* holding to first-party claims thereby distinguishing it from the instant case. 237 S.W.3d at 706. Nothing in the statute supports a different rule in this regard for first versus thirdparty claims. In fact, the statute anticipates the existence of both types of claims by describing the "person bringing the suit" broadly and referring to the danger created by the intoxicated person as impacting "himself and others." TEX. ALCO. BEV.CODE § 2.02.[15] Contrary to CHIEF JUSTICE JEFFERSON's dissent, nothing in the Dram Shop Act prevents a provider from "lessen[ing] or escap[ing] liability altogether" if a jury determined that the intoxicated patron was completely responsible for the damages and injuries suffered by a third-party. *See* 237 S.W.3d at 701–02. Refusing to apply *Sewell's* rule of law to cases in which a third party is injured as a result of an intoxicated person's actions is contrary to the language of the Dram Shop Act, to the premise of *Sewell,* and to the purpose of the Dram Shop Act: the provider's liability stems from its own conduct. *See Borneman,* 22 S.W.3d at 413 (correctly holding that a jury question that was inconsistent with the language of the Dram Shop Act for establishing liability was erroneous).

### D. Legislative Intent

■ Our review is confined to identifying the expressed legislative intent and applying it. Even if this Court were to agree with the court of appeals that holding a provider vicariously liable for a patron's intoxication may be a legitimate public policy, we would still be constrained to faithfully apply the Legislature's statutory proportionate responsibility scheme. Imposing vicarious liability in dram-shop cases conflicts with the Proportionate Responsibility Act. The court of appeals suggested that the Legislature did not intend for an innocent third party to bear the risk

---

**15.** Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3, 1987 Tex. Gen. Laws 1673, 1674 (amended 2005).

of an intoxicated patron's insolvency. But, by enacting Chapter 33, the Legislature made the policy decision that an innocent third party, suing the intoxicated patron and the dram shop, could be burdened with the risk of a joint tortfeasor's insolvency. A tortfeasor who was found less than fifty-one percent responsible does not have to pay the entire amount of damages, only his or her proportionate share. TEX. CIV. PRAC. & REM.CODE §§ 33.013(a), (b)(1).[16]

■ We recognize that there may be a greater incentive to avoid conduct that leads to responsibility for higher damages than to avoid conduct that leads to responsibility for lower damages. Accordingly, a statute that makes providers liable for all the damages caused by an intoxicated patron could be a greater deterrent to serving that patron. That may influence the drafting of a statute, but it says little about how to interpret the words of the Dram Shop and Proportionate Responsibility Acts. The statutes only hold providers responsible for their own conduct causing injury. This is consistent with a fundamental tenet of tort law that an entity's liability arises from its own injury-causing conduct. Under the dissenters' positions, the provider would be responsible for all the damages caused by an inebriated patron even if he never drank any of the product purchased from the provider. The same would occur if an inebriated patron drank a bit of the dram shop's alcohol but evidence established that it did not contribute any further to the deterio-

ration of the patron's ability to drive safely. We recognize some of the alternatives the Legislature considered as it drafted the statutes; however, we do not pick and choose among policy options on which the Legislature has spoken. "Our role ... is not to second-guess the policy choices that inform our statutes or to weigh the effectiveness of their results; rather, our task is to interpret those statutes in a manner that effectuates the Legislature's intent." *McIntyre v. Ramirez*, 109 S.W.3d 741, 748 (Tex.2003). Upon a finding of liability, the statutes make dram shops responsible for the proportionate share of the injuries their conduct caused.

The broad coverage of the proportionate responsibility statute to tort claims is persuasive. The Chapter 33 proportionate responsibility scheme includes exceptions for certain torts, but claims against providers of alcohol are not among those exceptions. *See, e.g.,* TEX. CIV. PRAC. & REM.CODE §§ 33.002(b),[17] (c).[18] For example, the Legislature carved out exceptions for a host of criminal acts, declaring that there should be joint and several liability instead of proportionate responsibility, but only if there was specific intent to do harm to others and the defendant acted in concert with another. *Id.* § 33.002.[19] The list of crimes is numerous and broad in scope, ranging from capital murder to fraudulent destruction of a writing, and also includes theft when "the punishment level ... is a felony of the third degree or higher." TEX. CIV. PRAC. & REM. CODE § 33.002(b)(13).[20] Section 33.002(c) ex-

---

16. Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3271 (amended 1987, 1995, 2003).

17. Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, § 2.05, 1987 Tex. Gen. Laws 37, 41 (amended 1989, 1995, 2001, repealed 2003).

18. Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, § 2.05, 1987 Tex. Gen. Laws 37, 41 (amended 1989, 1995, 2001, 2003).

19. Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, § 2.05, 1987 Tex. Gen. Laws 37, 41 (amended 1989, 1995, 2001, 2003).

20. Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, § 2.05, 1987 Tex. Gen. Laws 37, 41 (amended 1989, 1995, 2001, repealed 2003).

pressly excluded from its coverage actions to collect workers' compensation benefits, actions against an employer for exemplary damages arising out of the death of an employee, and claims for exemplary damages included in an action to which this chapter otherwise applies.[21] When the Legislature has chosen to impose joint and several liability rather than proportionate liability, it has clearly said so.

The Legislature created a strict liability cause of action against a person who manufactures methamphetamine for injuries, damages, or death arising from the manufacture or exposure to the manufacturing process of that drug. TEX. CIV. PRAC. & REM.CODE §§ 99.002–.003. The Legislature declared that a person who manufactures methamphetamine and is found liable for any amount of damages arising from the manufacture is jointly liable with any other defendant for the entire amount of damages arising from the manufacture. *Id.* § 99.004. In both the statute that created the cause of action against such manufacturers and in amendments to the Proportionate Responsibility Act, the Legislature specifically said that the proportionate responsibility scheme "does not apply in an action for damages arising from the manufacture of methamphetamine." *Id.* § 99.005; *see also id.* § 33.002(c)(3). The Legislature did not carve out an exclusion for alcohol providers in either the Proportionate Responsibility Act or the Dram Shop Act.

Both dissents struggle to conclude that an injured third party may recover his damages entirely from the alcohol provider under the Dram Shop Act. CHIEF JUSTICE JEFFERSON argues that the Act creates "a form of vicarious liability," while JUSTICE O'NEILL allows a jury to apportion liability but ultimately holds the provider liable for the full amount of damages, regardless of the jury's determination. The stated public policy behind the Alcoholic Beverage Code, including the Dram Shop Act, is "the protection of the welfare, health, peace, temperance, and safety of the people of the state." TEX. ALCO. BEV.CODE § 1.03. More specifically, the Dram Shop Act codifies the exclusive action against an alcohol provider for injuries or damages resulting from the intoxication of a patron. *Id.* § 2.02. The legislative intent to protect the public and provide a potential remedy against an alcohol provider does not equate to a guarantee of recovery against a provider by an injured party. The Act simply supplants in a single codified action all prior common law theories that previously could have been employed by the injured party (either a third party or the intoxicated patron himself) against a provider. *See id.* § 2.03. While the dissents' positions might express sound public policy, we are constrained to conclude that neither correctly applies the Legislature's statutory proportionate responsibility scheme. Both read more into the Dram Shop Act than the words chosen by the Legislature can bear.

At the time of the Duenezes' injuries, the proportionate responsibility scheme imposed joint and several liability on those who caused toxic tort injuries and those who released hazardous substances into the environment if their responsibility was equal to or greater than fifty percent. TEX. CIV. PRAC. & REM.CODE § 33.013(c).[22] In such cases, liability was not limited by proportionate responsibility. In 2003, the Legislature revisited that exclusion and repealed it in its entirety.[23] Now, defen-

---

21. Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, § 2.05, 1987 Tex. Gen. Laws 37, 41 (amended 1989, 1995, 2001, 2003).

22. Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3271 (amended 1987, 1995, 2003).

23. Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 4.10(5), 2003 Tex. Gen. Laws 847, 859.

dants found liable for these tortious acts are subject to the general proportionate responsibility scheme. The Legislature seemed intent on creating a general scheme of proportionate responsibility for tort claims, subject to specific statutory exclusions.

 Finally, our controlling interpretation of that statutory scheme has remained in place since our 1993 decision in *Smith v. Sewell.* 858 S.W.2d at 356 (holding that "[a]pplication of the principles of comparative responsibility to causes of action brought under [the Dram Shop Act] establishes a consistent and equitable approach to the issue of 'dramshop liability' generally, and first party 'dramshop liability' specifically"). In the thirteen years since *Sewell* was decided, the Legislature has amended the Dram Shop Act and has extensively amended the proportionate responsibility statutes, but it has never excluded a cause of action against a provider of alcohol from comparative or proportionate responsibility. We presume that the Legislature knew of our holding in *Sewell* and that by subsequently re-enacting the Proportionate Responsibility Act and the Dram Shop Act, it accepted this Court's construction of those statutes. " 'The Legislature must be regarded as intending statutes, when repeatedly reenacted, as in the case here, to be given that interpretation which has been settled by the courts.' " *Wich v. Fleming,* 652 S.W.2d 353, 355 (Tex.1983) (quoting *Marmon v. Mustang Aviation, Inc.,* 430 S.W.2d 182, 187 (Tex.1968)); *Coastal Indus. Water Auth. v. Trinity Portland Cement Div., Gen. Portland Cement Co.,* 563 S.W.2d 916, 918 (Tex.1978).

Given the many instances in which the Legislature has (1) expressly said that certain causes of action are excluded from the Proportionate Responsibility Act, which would otherwise limit liability commensurate with proportionate responsibility, and (2) has expressly tailored special joint and several liability provisions for some causes of action, the phrase in Section 2.03 cannot reasonably be read to require vicarious liability and joint and several liability in lieu of proportionate liability for alcohol providers.

The dissenters suggest that the Court's opinion exonerates dram shops from liability. They draw a stark distinction between excusing a dram shop from liability for its conduct that violates the Act, which they assert to be the Court's opinion, and making the provider liable for all the injuries caused by an inebriated patron, which is the dissenters' position. For several reasons, our interpretation does not excuse dram shops from liability for their conduct. First, it is simply inaccurate to describe the Court's holding as allowing dram shops to escape liability. The central issue in this case is the apportionment of damages among liable parties. Dram shops are liable if they provide alcoholic beverages to an individual that is obviously intoxicated to the extent that he presents a clear danger to himself and others, and the intoxication of the patron was a proximate cause of the injuries. TEX. ALCO. BEV.CODE § 2.02(b). These requirements were promulgated by the passage of the Act in 1987. In this case, we hold that dram shops are responsible for the proportion of damages they cause or contribute to cause, as set forth in the Proportionate Responsibility Act. TEX. CIV. PRAC. & REM.CODE § 33.003.[24] Second, we follow the Legislature's guidance in the language of the stat-

---

**24.** Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.06, 1987 Tex. Gen. Laws 37, 41, *amended by* Act of May 8, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 972, *amended by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 4.02, 2003 Tex. Gen. Laws 847, 855 (current version at TEX. CIV. PRAC. & REM.CODE § 33.003).

ute, as explained above. Third, it is not true that juries will always assign most of the responsibility for injury, as between a provider and an inebriated patron, to the patron. Juries have found the dram shop equally or more responsible than the patron for injuries proximately caused by the intoxication of the patron. *See, e.g., I-Gotcha, Inc. v. McInnis,* 903 S.W.2d 829, 837 (Tex.App.Fort Worth 1995, writ denied) (jury found that the dram shop proximately caused fifty-one percent of the injuries); *Venetoulias v. O'Brien,* 909 S.W.2d 236, 239 (Tex.App.-Houston [14th Dist.] 1995, writ dism'd by agr.) (trial court found that the patron proximately caused thirty-three percent of the injuries and the dram shop thirty-three percent). Unlike CHIEF JUSTICE JEFFERSON's position, which would take the question of apportioning responsibility away from the jury, we leave this determination to the fact-finder imbued with "constitutional authority to weigh conflicting evidence." *See Volkswagen of Am., Inc. v. Ramirez,* 159 S.W.3d 897, 913–14 (Tex.2004) (Jefferson, C.J., dissenting).

### III. Severance

The trial court severed F.F.P.'s cross-claim against Ruiz and then tried the case with F.F.P. as the only defendant. The court of appeals affirmed the trial court's severance order, concluding that because F.F.P. was vicariously liable for Ruiz's conduct, F.F.P.'s right of recovery, if any, was through an indemnification action only. 69 S.W.3d at 807. The court of appeals held that any indemnity claim F.F.P. might have against Ruiz would not accrue until F.F.P.'s liability to the Duenezes' was "fixed and certain." *Id.* at 807–08. By this reasoning, F.F.P.'s claim for indemnification against Ruiz would not become actionable until an adverse judgment was taken. *Id.* The court rejected F.F.P.'s request to include Ruiz as a responsible third party under Chapter 33, reasoning

that F.F.P.'s vicarious liability puts F.F.P. in the same position as Ruiz would have been. *Id.* at 808. Because Ruiz's actions are imputed to F.F.P., the court continued, Ruiz is not a responsible third party who may be included in a proportionate responsibility question. *Id.*

Rule 41 of the Texas Rules of Civil Procedure provides that "[a]ny claim against a party may be severed and proceeded with separately." We will not reverse a trial court's order severing a claim unless the trial court abused its discretion. *Guar. Fed. Sav. Bank v. Horseshoe Op. Co.,* 793 S.W.2d 652, 658 (Tex.1990).

A claim is properly severable if (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues.

*Id.* We have explained that avoiding prejudice, doing justice, and increasing convenience are the controlling reasons to allow a severance. *See id.*

As already explained, the Dram Shop Act does not make a provider vicariously liable for the conduct of an intoxicated patron. F.F.P.'s liability arises from the actions of its employees and agents—not through the actions of Ruiz. *See Sewell,* 858 S.W.2d at 355. Thus, F.F.P.'s claim against Ruiz is not one for indemnification that could be properly severed; it is one of contribution for Ruiz's proportionate share of the damages for which he is responsible. F.F.P.'s claim against Ruiz is "interwoven with the remaining action": it involves the same facts and issues to be litigated in the Duenezes' action against F.F.P. In fact, to succeed in a claim against F.F.P., the Duenezes had to prove that Ruiz was obviously intoxicated and that his conduct proximately caused damages—the same facts and issues that

would be litigated in a separate suit by F.F.P. against Ruiz. The trial court abused its discretion in severing F.F.P.'s claim against Ruiz.

■ Chapter 33 requires "[t]he trier of fact, as to each cause of action asserted, [to] determine the percentage of responsibility ... for [each claimant, defendant, settling person, and responsible third party who has been joined under Section 33.004] with respect to each person's causing or contributing cause in any way the harm for which recovery of damages is sought...." TEX. CIV. PRAC. & REM.CODE § 33.003. This statutory mandate is not discretionary; failing to correctly apply the law is an abuse of discretion. *In re Kuntz,* 124 S.W.3d 179, 181 (Tex.2003). Therefore, F.F.P. was entitled to a charge that included a question to allow the trier of fact in a single trial to determine Ruiz's proportionate share of responsibility. The trial court's severance constituted reversible error.

### IV. Conclusion

The trial court abused its discretion by severing F.F.P.'s claim against Ruiz, proceeding to trial with F.F.P. as the only defendant, and refusing to submit jury questions for determination of Ruiz's negligence and proportion of responsibility. We reverse the court of appeals judgment and remand the case to the trial court for a new trial.

Chief Justice JEFFERSON filed a dissenting opinion.

Justice O'NEILL filed a dissenting opinion.

Chief Justice JEFFERSON, dissenting.

If a bar sells liquor to a person so "obviously intoxicated" that he is "a clear danger to himself and others," to what extent does the sale "proximately cause" the harm that person inflicts when he gets behind the wheel? The Legislature has answered that it does not matter. If the bar sells to a drunk, it must pay damages when the drunk's intoxication (not the provider's sale) causes the sort of trauma at the heart of this case. The Legislature plainly believes that deterring such a sale is sound public policy. By imposing potentially crippling financial penalties on those who ignore its dictates, the statute has the salutary effect of enlisting providers in the state's campaign against drunk driving. Under the Court's construction, however, the bar may *avoid* liability precisely *because* its patron was so "obviously intoxicated" and such a "clear danger" that the sale could not have proximately caused carnage on a Texas road. The dram shop thus has a perverse incentive to establish at trial that its customer was in such a drunken state that selling him "one for the road" could not have contributed to the harm his intoxication later caused. I cannot agree that the Legislature intended as a defense to liability proof that the dram shop completed a sale that the statute quite sensibly forbids.

The Court relies heavily on our opinion in *Sewell,* but as I demonstrate below, the Court's reliance on that case only perpetuates our prior error in interpreting the Dram Shop Act. *See Smith v. Sewell,* 858 S.W.2d 350, 356 (Tex.1993). I would hold, contrary to *Sewell,* that the Legislature has imposed a form of vicarious liability on a dram shop for the acts of its intoxicated customer. Because the shop's conduct is statutorily irrelevant in relation to the plaintiff's injury, there is no legitimate basis for comparing its responsibility with that of the intoxicated person.

### I

### Vicarious Liability and the Dram Shop Act

The question here is whether and, if so, how chapter 33's proportionate responsibility scheme applies to claims based on the

Dram Shop Act. Our separate writings in this case demonstrate that the statutes are not easily harmonized. *See also Fid. & Guar. Ins. Underwriters Inc. v. Wells Fargo Bank,* No. H–04–2833, 2006 U.S. Dist. LEXIS 23545, at *17, 2006 WL 870683, at *5 (S.D.Tex. Mar. 31, 2006) (noting that "courts and commentators alike have recognized the difficulty in reconciling the language of the Proportionate Responsibility Statute with certain causes of actions, including vicarious and/or derivative liability actions"). This is not the first time we have struggled to reconcile chapter 33 with another statute's terms. *See, e.g., Southwest Bank v. Info. Support Concepts, Inc.,* 149 S.W.3d 104, 111 (Tex.2004) (concluding that, even assuming a UCC conversion claim is a tort, "the Legislature did not intend to upset the UCC's carefully balanced liability provisions by applying Chapter 33 to a UCC-based conversion claim" and "[t]o hold otherwise would ignore the UCC itself and thwart its underlying purpose"). Nor have we been the only court to recognize exceptions to the statute's apportionment scheme. *See, e.g., Fid. & Guar. Ins. Underwriters,* 2006 U.S. Dist. LEXIS 23545, at *18, 2006 WL 870683, at *5 ("Although the language of the statute itself indicates a clear legislative preference for apportionment of responsibility in all tort actions, it is equally clear that an apportionment scheme is not proper in certain cases."); *Rosell v. Cent. W. Motor Stages, Inc.,* 89 S.W.3d 643, 656–57 (Tex.App.-Dallas 2002, pet. denied).

The Court and JUSTICE O'NEILL would submit both the provider and the intoxicated person in the apportionment question, the Court employing it to reduce the dram shop's liability and JUSTICE O'NEILL to facilitate the shop's contribution action against the intoxicated tortfeasor. While I

concede that *Sewell* supports a comparative submission of the provider and the intoxicated person, such a submission is inconsistent both with the provider's essentially vicarious liability and chapter 33's mandate to apportion liability only among those causing the harm at issue. The Court holds that dram shop liability cannot be vicarious, reiterating our holding in *Sewell* that such liability is based on the provider's own conduct. JUSTICE O'NEILL writes that liability is both direct and vicarious, as it includes the provider's wrongful sale and imputes to the provider the harm caused by the drunk's intoxication. I disagree with those interpretations. To give effect to each statute, we must acknowledge that the Dram Shop Act imposes a form of vicarious liability.

Both the Dram Shop Act and chapter 33 support such an interpretation. While liability under the Dram Shop Act is premised on the provider's sale, the requisite causal link focuses solely on the drunk's actions. Once alcohol is provided to a person so "obviously intoxicated to the extent that he presented a clear danger to himself and others," the provider's role is complete. *See* TEX. ALCO. BEV.CODE § 2.02(b)(1). From that point forward, any harm caused by the intoxicated person is imputed to the provider; indeed, for purposes of the Dram Shop Act, the provider virtually becomes the drunk. Hence, the only causation required under the statute focuses on the intoxicated person's, not the dram shop's, actions. *Id.* § (b)(2) (requiring proof that "the *intoxication* of the recipient of the alcoholic beverage was a proximate cause of the damages suffered") (emphasis added).

F.F.P. concedes that, under the Dram Shop Act, the provider's actions need not be a cause-infact of the harm.[1] Earlier

---

1. F.F.P.'s reply brief asserts, correctly, that "[u]nder [the statutory] elements, the dram shop plaintiffs need not prove that 'but for' the alcohol seller's conduct, the harm would not have occurred—presumably because it will always be hard to prove that any injury

versions of the act included such an element, but the Legislature deleted it before the statute was enacted. *Compare* Tex. C.S.H.B. 1652, 70th Leg., R.S. (1987) (Dram Shop Act claim requires proof that "the provider was the last known contributor to the intoxication of the recipient; and that the recipient consumed no alcoholic beverage subsequent to that served by the last contributor") *with* TEX. ALCO. BEV.CODE § 2.02(b) (containing no such requirement). Instead, unlike other states,[2] the Texas statute imposes liability even absent causation relating to the provision of alcohol.[3] If the dram shop's conduct need not be a substantial factor in bringing about

the injury, then it cannot be said to have caused or contributed to the accident. *See Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex.1995).

That Texas omitted such a requirement is significant. Chapter 33 requires apportionment among claimants, defendants, settling persons, and responsible third parties, but not all such persons are submitted in the apportionment question. *See* TEX. CIV. PRAC. & REM.CODE § 33.003. Instead, chapter 33 imposes an important limitation on the allocation of responsibility: *Only those persons who "caus[ed] or contribut[ed] to cause in any way the harm for which recovery of damages is sought"* must be included in apportioning responsibility for that harm.[4] *Id.* §§ 33.003,

---

occurred because of any particular sale of alcoholic beverage."

**2.** Some states require that the dram shop's provision of alcohol cause the harm. *See, e.g.*, ARK.CODE § 16–126–104 (2006) (requiring jury in dram shop case to determine "whether or not the *sale* constitutes a proximate cause of any subsequent injury to other persons") (emphasis added); GA.CODE § 51–1–40 (2000) ("[A] person who ... knowingly sells, furnishes, or serves alcoholic beverages to a person who is in a state of noticeable intoxication, knowing that such person will soon be driving a motor vehicle, may become liable for injury or damage caused by or resulting from the intoxication of such minor or person *when the sale, furnishing, or serving is the proximate cause of such injury or damage.*") (emphasis added); MICH. COMP. LAWS § 436.1801 (2001) ( "[A]n individual who suffers damage or who is personally injured by a minor or visibly intoxicated person by reason of the unlawful selling, giving, or furnishing of alcoholic liquor to the minor or visibly intoxicated person, *if the unlawful sale is proven to be a proximate cause of the damage, injury, or death*, or the spouse, child, parent, or guardian of that individual, shall have a right of action in his or her name against the person *who by selling, giving, or furnishing the alcoholic liquor has caused or contributed to the intoxication of the person or who has caused or contributed to the damage, injury, or death*") (emphasis added); TENN.CODE § 57–10–102 (2002)(imposing liability if a jury finds, "beyond a reasonable doubt that the

*sale* by such person of the alcoholic beverage or beer *was the proximate cause of the personal injury or death sustained* and that such person ... [s]old the alcoholic beverage or beer to an obviously intoxicated person and such person *caused the personal injury or death as the direct result of the consumption of the alcoholic beverage or beer so sold*") (emphasis added).

**3.** This may seem punitive, as it risks imposing liability without fault, but the Legislature also provides a relatively cost-free safe harbor: the *trained server defense*. As the Court's original opinion noted, section 106.14(a) provides that "the actions of an employee shall not be attributable to the employer if" the provider establishes that it required the employee to attend a training course approved by the Texas Alcoholic Beverage Commission, the employee actually attended the course, and the provider did not encourage the employee to violate the Alcoholic Beverage Code. Act of May 21, 1987, 70th Leg., R.S., ch. 582, § 3, 1987 Tex. Gen. Laws 2298, 2299 (amended 2003) (current version at TEX. ALCO. BEV.CODE § 106.14(a)).

**4.** This is consistent with *Borneman v. Steak & Ale of Texas, Inc.*, 22 S.W.3d 411, 412–13 (Tex.2000), a dram shop case in which we held that it was error to submit a jury question asking whether the conduct of an alcohol provider was a proximate cause of the occurrence in question. After the Court issued its November 3, 2006 opinion, the Due-

33.011(4) (emphasis added); William D. Underwood & Michael D. Morrison, *Apportioning Responsibility in Cases Involving Claims of Vicarious, Derivative, or Statutory Liability for Harm Directly Caused by Another*, 55 BAYLOR L.REV. 617, 638 (2003) (hereinafter *"Apportioning Responsibility"*) ("[U]nder section 33.003, the jury apportions responsibility among only those persons whose *conduct caused or contributed to cause the plaintiff's injury*.") (footnote omitted). This restriction is "especially significant" in cases involving claims against persons whose liability is vicarious:

> A person whose liability was purely vicarious had not personally engaged in "conduct or activity" that had "caused or contributed to cause" the harm. Liability was based instead entirely on the relationship between the person whose tortious conduct proximately caused the harm and the person who was vicariously responsible. Thus, rather than allocating responsibility among persons directly liable and persons vicariously liable, whatever responsibility existed for persons directly liable was simply passed on to persons vicariously liable. The vicariously liable defendant essentially stepped into the shoes of the tortfeasor who was directly responsible and assumed that person's responsibility to the claimant.

*Id.* at 628–29 (footnote omitted). Because the inquiry involves the harm for which recovery of damages is sought, "it is obvious that it concerns only the primary conduct of the active participants in the event, accident, or physical episode giving rise to the injuries complained of by the claimant, and the causational role of that primary conduct in the episode." Carl David

Adams, *The "Tort" of Civil Conspiracy in Texas*, 54 BAYLOR L.REV. 305, 315 (2002); Gregory J. Lensing, *Proportionate Responsibility and Contribution Before and After the Tort Reform of 2003*, 35 TEX. TECH L.REV. 1125, 1184–86 (2004) (noting that "[i]t is problematic to assign the jury the task of apportioning responsibility between the intoxicated person and the dram shop when the dram shop's statutory liability is not necessarily based on true responsibility for the accident, in the sense of causing the accident, at all").

Courts applying chapter 33's apportionment scheme in negligent entrustment cases—a variant of vicarious liability— have used similar reasoning to conclude that an entrustor should not be included in the apportionment question. In *Rosell v. Central West Motor Stages, Inc.*, the Rosells, plaintiffs in a wrongful death and survival action, contended that the trial court erred by refusing to submit Central West, employer of the allegedly negligent bus-driver and owner of the vehicle that struck and killed their son, in the jury's apportionment question. The court of appeals disagreed:

> The Rosells contend that Central West should be included because it was a producing or contributing cause of the injuries to Chad. Although negligent entrustment and negligent hiring are considered independent acts of negligence, these causes are not actionable unless a third party commits a tort. In that respect, these causes are similar to the respondeat superior theory of recovery where, unless the employee commits a tort in the scope of employment, the employer has no responsibility. In reviewing the application of section 33.003

nezes moved for rehearing, asserting that the Court's latest interpretation of the statute directly conflicts with *Borneman*. A comparative submission, which the Court

now requires in this case, presupposes that the provider's conduct is in issue. In this respect, the Court's current holding certainly undermines, if not overrules, *Borneman*.

to responsibility, we observe that, while the statute on its face requires all defendants to be included in the apportionment question, it would not be proper for an employer to be included along with the driver if its only responsibility was that of respondeat superior. Section 33.003 has not been used to require both a driver and employer to be submitted in the apportionment question in that situation.

Similarly, the causes of action for negligent entrustment and hiring are a means to make a defendant liable for the negligence of another. Once negligent hiring or entrustment is established, the owner/employer is liable for the acts of the driver, and the degree of negligence of the owner/employer is of no consequence. Thus, because Rieve's negligence would be passed on, it was proper to apportion fault among those directly involved in the accident.

*Rosell*, 89 S.W.3d at 656–57 (citations and footnote omitted).

Even before chapter 33's 1995 amendments, courts engaged in similar analysis to conclude that the entrustor should not be included in an apportionment question. In *Loom Craft Carpet Mills, Inc. v. Gorrell*, the court of appeals noted that:

Negligent entrustment liability is derivative in nature. While entrusting is a separate act of negligence, and in that sense not imputed, it is still derivative in that one may be extremely negligent in *entrusting and yet have no liability* until the driver causes an injury. If the owner is negligent, his liability for the acts of the driver is established, and the degree of negligence of the owner would be of no consequence. When the driver's wrong is established, then by negligent entrustment, liability for such wrong is passed on to the owner. We believe the better rule is to apportion fault only among those directly involved

in the accident, and to hold the entrustor liable for the percentage of fault apportioned to the driver.

*Loom Craft*, 823 S.W.2d 431, 432 & n. 7 (Tex.App.-Texarkana 1992, no pet.) (declining to follow cases from other jurisdictions in which fault was apportioned to the entrustor); *see also Wyndham Hotel Co. v. Self*, 893 S.W.2d 630, 640 (Tex.App.-Corpus Christi 1994, writ denied); *Rodgers v. McFarland*, 402 S.W.2d 208, 210 (Tex. App.-El Paso 1966, writ ref'd n.r.e.) (noting that, in a negligent entrustment case, "[t]he proximate cause of the accident or the occurrence is the negligence of the driver and not that of the owner").

More recently, the Fort Worth Court of Appeals grappled with the proper submission of a negligent entrustment claim. *Bedford v. Moore*, 166 S.W.3d 454 (Tex. App.-Fort Worth 2005, no pet.). Based in part on this Court's now-withdrawn opinion in this case, the court concluded that the entrustor should be submitted in the apportionment question. The court then held, however, that failure to submit the entrustor was not reversible error:

There were only two people involved in the accident. Therefore, the submission of the acts of "other parties" whose actions preceded the actions of [the driver] at the time of the accident could only have contributed to her actions at the accident scene, that is, to her forty percent negligence. In other words, because there were only two parties involved in the incident, the jury has decided how those actions at the time of the accident should be apportioned as far as responsibility is concerned. What led up to those actions at the time of the accident does not change those actions at the accident scene but can only be subparts of those respective responsibilities. [The entrustors] did not cause [the plaintiff] to cross the high-

way or [the driver] to strike that truck. Therefore ... we conclude that it was harmless error to omit them from those questions.

*Bedford,* 166 S.W.3d at 464.[5] This passage captures the proper submission in a vicarious liability case: If, in fact, the entrustor's share of responsibility is merely a "subpart" of the entrustee's share, then the entrustor should not be submitted separately. Only the entrustee should be submitted, and his or her negligence would then be imputed to the entrustor as a matter of law.

Under similar reasoning, even after chapter 33's 1995 amendments, the provider should not be included in the apportionment question. The Dram Shop Act is "intended to deter providers of alcoholic beverages from serving alcoholic beverages to obviously intoxicated individuals who may potentially inflict serious injury on themselves and on innocent members of the general public." *Sewell,* 858 S.W.2d at 356. The Court's holding runs counter to that policy. As commentators recognize:

> If a person whose conduct creates a foreseeable risk of misconduct by another (in other words, a person whose liability is derivative) can largely escape responsibility simply because the very event which made his own conduct wrongful in the first place actually occurs, then the incentive to take precautions against the risk is substantially reduced. This concern is especially great when the foreseeable event is a crime of violence given the likelihood that a jury, when asked to apportion responsibility between a person who commits a crime of violence and a person whose conduct simply involved facilitating that crime through negligence,

might be expected to apportion most of the responsibility to the person who actually committed the crime. Allocating responsibility in cases of vicarious or derivative liability would not only be bad policy, but has not traditionally been how Texas courts have interpreted and applied the allocation of responsibility provisions in Chapter 33. Moreover, nothing in the language or the legislative history of the 1995 tort reform revisions to the allocation of responsibility provisions of Chapter 33 either requires or justifies departure from the traditional rule that juries are not asked to allocate responsibility between persons who are directly liable and persons whose liability is either derivative or vicarious.

*Apportioning Responsibility,* 55 BAYLOR L.REV. at 624–25 (footnotes omitted). Thus, "given that causation is imputed to the provider in an action under the [Dram Shop] Act, section 33.003 neither contemplates or permits the apportionment of responsibility between the intoxicated patron and the provider in an action brought by an injured third party." *Id.* at 642. This approach is supported by the Restatement, which provides that "[a] person whose liability is imputed based on the tortious acts of another is liable for the entire share of comparative responsibility assigned to the other, regardless of whether joint and several liability or several liability is the governing rule for independent tortfeasors who cause an indivisible injury." RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 13 (2000).

The Court concludes that it is improper to analogize dram shop claims to other vicarious liability situations, because those situations typically rely on a right of con-

---

5. On the failure-to-submit issue, Chief Justice Cayce concurred in the result only, as he felt that the sixty-percent responsibility the jury placed on the plaintiff barred her recovery as a matter of law, rendering harmless any error in failing to submit the employer's negligence. *Bedford,* 166 S.W.3d at 456 (Cayce, C.J., concurring).

trol or an employer/employee relationship, which may be absent in a dram shop situation. In this case, however, the Legislature chose to impose vicarious liability for Dram Shop Act claims and consciously opted to omit control as a prerequisite. That the justification for doing so may not comport with the rationale for common-law vicarious liability is beside the point.

The Court reasons that, because the Dram Shop Act was not among the explicit exceptions to proportionate liability set forth in chapter 33, it must be included. This is not necessarily so. As we recognized in *Southwest Bank*, if another statute enacts a comparative responsibility scheme, chapter 33 will not govern a claim brought under the other statute, notwithstanding that the other statute is not among chapter 33's enumerated exceptions. *See Southwest Bank*, 149 S.W.3d at 111. Nor did the Legislature exclude negligent entrustment or respondeat superior claims from the reach of chapter 33. Applying the Court's logic, by omitting those actions the Legislature intended that employers or entrustors be submitted in an apportionment question even though their liability is purely vicarious. More likely, the Legislature never envisioned that a court would include in the apportionment question persons whose only liability was vicarious.

The Court's decision to include the provider in the apportionment question would first necessitate an inquiry otherwise unnecessary under the Dram Shop Act: whether the provider's conduct caused or contributed to cause the plaintiff's injuries. *Apportioning Responsibility*, 55 Baylor L.Rev. at 638.

> If the jury's answer was no, then under the express language of section 33.003, the jury could not consider the provider in apportioning responsibility. Since no responsibility could be apportioned to the provider, one possible result would

be that the provider would not be liable for any of the plaintiff's damages. This result would have the effect of rewriting the Dram Shop Act to read into the Act a causation requirement that simply is not there. *The provider would always escape all responsibility unless the jury found a causal connection between the provider's conduct and the plaintiff's injury. That result obviously would be wrong.*

*Id.* (footnote omitted) (emphasis added). The Legislature meant to make providers liable *whether or not* their conduct played a causative role in subsequent harm. The Court's holding eviscerates that policy choice and requires that the Duenezes prove not only that Ruiz consumed F.F.P.'s alcohol, but also that his consumption so aggravated the danger he posed pre-sale that the sale (and not just his prior intoxicated condition) "caused" the ultimate harm. But the statute does not require that the patron consume the alcohol, that the sale aggravate the patron's prior intoxication, or that the provider play any role in causing or contributing to the accident. Ironically, under the Court's interpretation, the provider now has an incentive to establish that its patron was so drunk at the time of sale that its conduct could not, as a matter of law, have contributed to the harm the patron ultimately caused. As a result, the very instrument that the Legislature employed to deter drunk driving (liability for serving a drunk) becomes a means to escape responsibility entirely.

Joining the intoxicated person as a responsible third party does not change this result. *See* Tex. Civ. Prac. & Rem.Code § 33.011. As commentators have noted:

> By adding the [responsible third party language] to section 33.003, the Texas legislature clearly intended to change existing law regarding the apportion-

ment of responsibility among tortfeasors with direct liability. But there is absolutely no indication in either the legislative history or the text of the amended apportionment of responsibility provisions of Chapter 33 that the legislature intended to now permit apportionment of responsibility among directly liable tortfeasors and those whose liability was only derivative or vicarious.

*Apportioning Responsibility,* 55 BAYLOR L.REV. at 631. Whatever percentage of responsibility is attributed to the drunk should be imputed to the provider, who may then seek indemnity from the intoxicated person. *Cf. Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 819–20 (Tex. 1984).

## II

### *Sewell* and Third–Party Actions

If I were writing on a clean slate, my analysis could end here. But in *Smith v. Sewell,* we determined that "[chapter 33] is applicable to Chapter 2 causes of action" and held that "an intoxicated person suing a provider of alcoholic beverages for his own injuries under Chapter 2 will be entitled to recover damages only if his percentage of responsibility is found to be less than or equal to 50 percent." *Sewell,* 858 S.W.2d at 356. Although our holding was not limited to first-party claims *(i.e.* a drunk suing a dram shop), our reasoning arguably supports such a limitation:

> Chapter 2 is intended to deter providers of alcoholic beverages from serving alcoholic beverages to obviously intoxicated individuals who may potentially inflict serious injury on themselves and on innocent members of the general public. But when it is the intoxicated individual who is injured due to his own intoxication, it is particularly appropriate that

his conduct in contributing to his injury should be considered in assessing the amount of recovery, if any, to which he is entitled. Application of the principles of comparative responsibility to causes of action brought under Chapter 2 establishes a consistent and equitable approach to the issue of "dramshop liability" generally, and first party "dramshop liability" specifically. This approach provides an effective solution to a difficult and controversial issue.

*Id.*

Even if limited to first-party claims, however, *Sewell* presents another, more difficult, problem. In *Sewell,* we held—incorrectly, in my opinion—that a provider should be included in the apportionment question because its conduct violated an applicable legal standard. *Sewell,* 858 S.W.2d at 356 (quoting "percentage of responsibility" definition and holding that "[b]ecause Chapter 2 clearly establishes a legal standard and creates a cause of action for conduct violative of that legal standard, the definition of 'percentage of responsibility' provides additional support for our determination that the Comparative Responsibility Act is applicable to Chapter 2 causes of action"). Implicitly, therefore, we held that the provider in a dram shop case must have "caused or contributed to cause" the harm for which recovery of damages was sought. For the reasons set forth above, that simply need not be the case. While *Sewell* remains workable for first-party claims, as apportionment between the drunk and the provider approximates what would occur in an indemnity action,[6] *Sewell's* reasoning breaks down when applied to third-party dram shop actions. Submitting both the drunk and the provider as parties who

---

**6.** *See B & B Auto Supply, Sand Pit, & Trucking Co. v. Cent. Freight Lines, Inc.,* 603 S.W.2d 814, 817 (Tex.1980) (recognizing common

law right to indemnity when a party's liability is vicarious).

"caused or contributed to cause" the harm, rather than imputing the drunk's actions to the provider, would allow the provider to lessen or escape liability altogether.

Thus, for example, a jury could determine that a provider's "percentage of responsibility" is zero—a not unlikely scenario given that the provider's actions are compared with a person so obviously intoxicated he posed a danger to himself and others—notwithstanding that the drunk's intoxication proximately caused the harm. This contravenes the purpose as well as the text of the Dram Shop Act, which imposes liability even absent causation relating to the provision of alcohol, and is unnecessary to a proper application of chapter 33. *See* TEX. ALCO. BEV.CODE § 1.03 (requiring that the Dram Shop Act be liberally construed to accomplish its purpose of protecting the welfare, health, and safety of the people). "To paraphrase Dean Prosser, it simply cannot be the law that a defendant can be relieved of the consequences of his wrongful conduct by the occurrence of the very risk which made his conduct negligent in the first instance." *Apportioning Responsibility*, 55 BAYLOR L.REV. at 650.

In *Sewell*, we were faced with a person suing a dram shop for damages he suffered in a one-car accident due to his own intoxication. Although *Sewell* correctly held that chapter 33 applies to first-party Dram Shop Act claims, its holding regarding the submission of the provider in the apportionment question cannot apply to third-party claims, and its reasoning for that submission does not comport with the statute's terms. Thus, I would limit *Sewell* to first-party claims and overrule its holding that the provider is properly included within those persons who caused the harm.

## III

### Conclusion

The Legislature, confronting a serious question of public health, enacted a strong deterrent to curb the plague of drunk driving in Texas. If a provider sells to a drunk, it must answer in damages for the injury its patron's intoxication visits upon an innocent person, even if the sale is not itself the proximate cause. The policy reflects a concern not only for the victim. It is a comprehensive approach designed to discourage the sale of liquor to a person whose intoxication poses an obvious danger to the public. Faced with the specter of catastrophic financial loss, a provider is more likely to intervene (for selfish interests, and to the public good) by closely monitoring a customer's alcohol intake, by refusing to serve more liquor to an obviously drunk person and, where appropriate, by offering to arrange alternative transportation or by alerting law enforcement. At a minimum, the provider has a direct incentive to enroll its employees in training that emphasizes how to recognize the debilitating effects of excessive alcohol consumption and offers methods to avoid its devastating consequences. *See* TEX. AL Co. BEV.CODE § 106.14(a). Considerations like these justify the Legislature's intentional omission of a proximate cause element with respect to the provider's sale. The Court's insertion of that defense, contrary to the statute's terms, seriously undermines an important deterrent.

In an appeal to cozening hope, the Court offers that a jury will not *always* assign most of the responsibility to a provider's patron. 237 S.W.3d at 705. The Duenezes will take cold comfort in that pronouncement. The record shows that Ruiz—already so intoxicated that he was a clear danger to others before F.F.P. completed the sale—drank, at most, one more beer in 1.5 miles of highway driving

afterwards. Under the legal sufficiency standards announced in *City of Keller v. Wilson,* 168 S.W.3d 802 (Tex.2005), that evidence will never support a finding that F.F.P. caused the accident. The Court's remand for a new trial is, in reality, a decree of rendition.

I would affirm the court of appeals' judgment.[7] *See* TEX.R.APP. P. 60.2(a).

Justice O'NEILL, dissenting.

The proportionate-responsibility statute directs its application to all tort-based causes of action. TEX. CIV. PRAC. & REM. CODE § 33.002. At the same time, the Dram Shop Act directs that alcohol providers who serve customers so obviously intoxicated that they present a clear danger to themselves and others are liable "for the actions of their [intoxicated] customers...." TEX. ALCO. BEV.CODE § 2.03.[1] Over two years ago, this Court issued an opinion giving effect to both statutes; when a customer who has been served in violation of the Dram Shop Act injures an innocent third party, the intoxicated customer's percentage of responsibility must be apportioned so that the provider may seek reimbursement from the customer, but the innocent third party may recover from the provider "for the actions of [its] customer[ ]." TEX. ALCO. BEV. CODE § 2.03. Unlike today's decision, our holding honored both the statutory-apportionment directive and the Dram Shop Act's derivative-liability component. Rather than reiterate the original opinion's exhaustive analysis here, I attach the Court's decision as an appendix to this dissent. A few additional points, though, are worthy of note.

First, between the time the Court issued its original decision in this case and the date rehearing was granted, more than seven months passed and three members of the former majority left the Court. F.F.P.'s motion for rehearing raised no new issues; every point was thoroughly considered by the Court in its prior decision. While F.F.P.'s motion for rehearing was pending, the Legislature convened without taking any action to alter this Court's original interpretation. Nevertheless, the Court withdrew the prior opinion, reached the opposite result, and accomplished judicially what the Legislature itself declined to do.

More substantively, while the Court parrots the statutory construction rule favoring interpretations that harmonize different statutes, it makes no effort whatsoever to reconcile the Dram Shop Act's specific language with the more general proportionate-responsibility statute, giving effect only to the latter. The Court reasons that

---

7. F.F.P. also contends the trial court erred in refusing to instruct the jury on sole proximate cause. F.F.P. bases its claimed entitlement to that instruction on evidence that Ruiz was reaching under the seat for a compact disc when the accident occurred, and it was this inattention, rather than Ruiz's intoxication, that caused the accident. The court of appeals held that Ruiz's carelessness was indistinguishable from his intoxication and, therefore, the trial court did not abuse its discretion in refusing to give the requested instruction. 69 S.W.3d at 809. In this Court's original opinion, the Court concluded that, as "[t]he instruction ... ask[ed] the jury to compare the actions of two different people rather than distinguish between the same person's intoxication and inattention[,][t]he requested instruction would not have focused the jury's attention on the act that F.F.P. contends was the sole proximate cause of the Duenezes' injuries; thus, the trial court did not err in refusing to submit it." I agree with both the court of appeals and the Court's original opinion on this point.

1. The Dram Shop Act has since been amended in a manner that does not affect my analysis. All citations in this dissent refer to the version applicable to the present case. Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3, 1987 Tex. Gen. Laws 1673, 1674 (amended 2003) (current version at TEX. ALCO. BEV.CODE § 2.03).

holding the dram shop liable for the actions of its intoxicated customer could, in some cases, impose joint and several liability on the dram shop if the jury found it less than fifty-one percent responsible, which would be contrary to Chapter 33's provisions. *See* 237 S.W.3d at 690 (citing TEX. CIV. PRAC. & REM.CODE § 33.013(a), (b)(1)). I believe this is precisely what the Legislature intended if a provider serves alcohol in violation of the Dram Shop Act. To avoid this potential result, the Court simply ignores the Dram Shop Act's derivative-liability component, *i.e.,* the provider's liability "for the actions of [its] customers." TEX. ALCO. BEV.CODE § 2.03. By ignoring the very language that imbues the Dram Shop Act with deterrent effect, the Court undermines the legislative policy underlying the entire Alcoholic Beverage Code, which is to "protect[ ] the welfare, health, peace, temperance, and safety of the people of the state," and to "liberally construe [the Code] to accomplish this purpose." TEX. ALCO. BEV.CODE § 1.03. The Dram Shop Act's derivative-liability component, designed to deter providers from selling alcohol to obviously intoxicated and clearly dangerous persons, can and should be reconciled with the proportionate-responsibility statute rather than selectively ignored.

To support its selective view, the Court today finds arguments convincing that the prior Court did not. Specifically, the Court interprets section 2.03 of the Dram Shop Act to signal nothing more than the exclusivity of the statutory remedy, marginalizing the specific language used. But as the prior Court noted:

> [i]f that had been the statutory purpose, [the statute] would have simply said: The liability of providers under this chapter is in lieu of common law or other statutory law warranties and duties of providers of alcoholic beverages.

Instead, section 2.03 clearly says:

> [t]he liability of providers under this chapter *for the actions of their customers, members, or guests who are or become intoxicated* is in lieu of common law or other statutory law warranties and duties of providers of alcoholic beverages.

TEX. ALCO. BEV.CODE § 2.03 (emphasis added).

237 S.W.3d at 690. The Court today also picks up the prior dissents' refrain that the Legislature specifically carved out exceptions to the proportionate-responsibility scheme for a number of criminal acts, like the manufacture of methamphetamine, yet did not make exceptions for alcohol providers. But the Dram Shop Act, with its express derivative-liability component, came out of the same legislative session that enacted comparative responsibility; being by its own terms a limited exception to comparative responsibility, there was no need to create a separate one. Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3, 1987 Tex. Gen. Laws 1673, 1674 (amended 2003) (current version at TEX. ALCO. BEV. CODE § 2.03); Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.06, 1987 Tex. Gen. Laws 37, 41 (amended 2003) (current version at TEX. CIV. PRAC. & REM.CODE § 33.003).

In sum, the disagreement in this case is, and has always been, over what the Legislature meant in the Dram Shop Act when it referred to *"the liability of providers under this chapter for the actions of their customers ... who are or become intoxicated."* TEX. ALCO. BEV.CODE § 2.03. Over two years ago, the Court considered this language significant and straightforward, and afforded the Legislature deference in choosing it. F.F.P. raised no new arguments on rehearing, and the Legislature proposed no new legislation in light of our prior interpretation. Today the Court usurps the legislative function and dilutes the deterrent protections the Dram Shop

Act was designed to afford. For the reasons expressed in the original Court's opinion, I would affirm the court of appeals' judgment.

## APPENDIX

### IN THE SUPREME COURT OF TEXAS

F.F.P. OPERATING PARTNERS, L.P., D/B/A MR. CUT RATE # 602, PETITIONER,

v.

XAVIER DUENEZ AND WIFE, IRENE DUENEZ, AS NEXT FRIENDS OF CARLOS DUENEZ AND PABLO DUENEZ, MINORS, RESPONDENTS

ON PETITION FOR REVIEW FROM THE COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS

Argued on March 5, 2003

JUSTICE O'NEILL delivered the opinion of the Court, in which CHIEF JUSTICE PHILLIPS, JUSTICE JEFFERSON, JUSTICE SCHNEIDER, and JUSTICE SMITH joined.

JUSTICE OWEN filed a dissenting opinion, in which JUSTICE HECHT, JUSTICE WAINWRIGHT, and JUSTICE BRISTER joined.

The plaintiffs in this dram-shop case were injured when their car was struck head-on by an intoxicated driver who had purchased alcohol from a convenience store that the defendant owned. The trial court refused to submit the intoxicated driver's percentage of responsibility to the jury for apportionment, as we required in *Smith v. Sewell*, 858 S.W.2d 350, 356 (Tex. 1993) when the intoxicated driver sued his provider for his own injuries. Instead, the trial court severed the provider's cross-action against the driver and rendered judgment on the jury's verdict against the provider. The court of appeals affirmed, holding that the proportionate responsibility statute does not apply when the injured plaintiff is an innocent third party. 69

S.W.3d 800. We hold that the proportionate responsibility statute applies to all Dram Shop Act claims, including the type at issue here. We conclude, however, that the judgment was correct because the provider is responsible to the innocent third-party plaintiffs for its own liability and that of its intoxicated patron, from whom it seeks recovery in the cross-action. We also conclude that, although the trial court should have submitted the intoxicated patron's percentage of responsibility to the jury for apportionment, its order severing the provider's cross-action against the intoxicated driver did not amount to reversible error. Finally, we hold that the trial court did not err in refusing to submit an instruction on sole proximate cause to the jury. Accordingly, we affirm the court of appeals' judgment, although on different grounds.

I

After consuming a case-and-a-half of beer, Roberto Ruiz drove his truck to a Mr. Cut Rate convenience store owned by F.F.P. Operating Partners, L.P., and purchased a twelve-pack of beer. The store's assistant manager, Carol Solis, sold the beer to Ruiz. Ruiz then got into his truck, opened a can of beer, and put the open beer can between his legs.[2]

Ruiz then drove onto a nearby highway, and several times swerved into oncoming traffic. Two cars had to dodge his truck to avoid a collision. As he crossed a bridge less than a mile from the convenience store, Ruiz swerved across the center line and hit the Dueñezes' car head-on. At the time of the collision, Ruiz had lowered his head below his truck's dashboard as he tried to reach beneath his seat to retrieve a compact disc.

---

**2.** There was conflicting testimony about whether Ruiz actually drank any of the beer that he purchased at Mr. Cut Rate.

All five members of the Dueñez family suffered some injury. Nine-year-old Ashley was the most seriously hurt. She suffered a traumatic brain injury, and will require round-the-clock care for the rest of her life. Xavier Dueñez, a corrections officer, also suffered some degree of permanent brain damage.

Ruiz was arrested at the accident scene for drunk driving. He pleaded guilty to intoxication assault and was sentenced to prison. The Dueñezes initially sued F.F.P., Ruiz, Solis, Nu–Way Beverage Company, and the owner of the land where Ruiz had spent the afternoon cutting firewood and drinking. F.F.P. named Ruiz a responsible third party and filed a cross-action against him. F.F.P. named no other persons or entities as responsible for the accident. The Dueñezes thereafter nonsuited all defendants except F.F.P.

At the pretrial conference, the Dueñezes obtained a partial summary judgment that Texas Civil Practice and Remedies Code Chapter 33's proportionate responsibility provisions did not apply to this type of case. The trial court then severed F.F.P.'s cross-action against Ruiz, leaving F.F.P. as the only defendant for trial. The severed action remains pending in the trial court.

At trial, F.F.P. requested a jury instruction that "if an act or omission of any person not a party to the suit was the 'sole proximate cause' of an occurrence, then no act or omission of any other person could have been a proximate cause." The trial court refused to give the instruction. The trial court also overruled F.F.P.'s objections that the jury charge omitted: (1) any question submitting Ruiz's negligence as a responsible third party; and (2) any comparative responsibility question asking the jury to determine what percentage of negligence causing the occurrence in question

was attributable to Ruiz and what percentage was attributable to F.F.P.

The jury found, as required to impose dram-shop liability, that when the alcohol was sold to Ruiz, it was "apparent to the seller that he was obviously intoxicated to the extent that he presented a clear danger to himself and others," and that Ruiz's intoxication was a proximate cause of the collision. *See* TEX. ALCO. BEV.CODE § 2.02(b). The jury returned a $35 million verdict against F.F.P., upon which the trial court rendered judgment.

The court of appeals affirmed the trial court's judgment, holding:

[I]n third-party actions under the Dram Shop Act in which there are no allegations of negligence on the part of the plaintiffs, a provider is vicariously liable for the damages caused by an intoxicated person, and such a provider is not entitled to offset its liability by that of the intoxicated person.

69 S.W.3d at 805. In reaching that conclusion, the court distinguished our decision in *Sewell*, 858 S.W.2d at 356, in which we held that the comparative responsibility statute applied to dram-shop causes of action. 69 S.W.3d at 805. The court of appeals concluded that *Sewell's* holding was limited to first-party actions, in which the intoxicated patron is suing for his own injuries, and did not apply when the plaintiff is an innocent third party injured by an intoxicated patron. *Id.* The court also held that the trial court did not abuse its discretion in severing F.F.P.'s cross-action against Ruiz, concluding that F.F.P.'s statutory liability was vicarious and not direct so that any rights F.F.P. had against Ruiz did not accrue until its own liability became fixed. *Id.* at 807.

Finally, the court rejected F.F.P.'s argument that the trial court should have submitted an instruction on sole proximate cause. *Id.* at 808–09. We granted

F.F.P.'s petition for review to consider Chapter 33's application and related issues.[3]

## II

In enacting the Dram Shop Act, the Legislature sought to "deter providers of alcoholic beverages from serving alcoholic beverages to obviously intoxicated individuals who may potentially inflict serious injury on themselves and on innocent members of the general public." *Sewell*, 858 S.W.2d at 356. A plaintiff seeking to impose liability on a provider under the Act must shoulder what we have called "an onerous burden of proof," *El Chico Corp. v. Poole*, 732 S.W.2d 306, 314 (Tex.1987), approaching the common-law gross negligence standard. *See Steak & Ale of Tex., Inc. v. Borneman*, 62 S.W.3d 898, 909 (Tex.App.-Fort Worth 2001, no pet.). The Act requires a plaintiff to prove that, when the alcohol was provided, the recipient "was obviously intoxicated to the extent that he presented a clear danger to himself and others," and the recipient's intoxication was a proximate cause of the damages suffered. TEX. ALCO. BEV.CODE § 2.02(b) (emphasis added). If the plaintiff can meet this burden, the Act nevertheless affords providers a relatively simple safe-harbor. Section 106.14(a)[4] shields a provider from liability for its employee's actions if the provider establishes that it required the employee to attend a training course approved by the Texas Alcoholic Beverage Commission, the employee actually attended the course, and the provider did not encourage the employee to violate the Alcoholic Beverage Code. Act of May 21, 1987, 70th Leg., R.S., ch. 582, § 3, 1987 Tex. Gen. Laws 2298, 2299 (amended 2003) (current version at TEX. ALCO. BEV.CODE § 106.16(a)); *see D. Houston, Inc. v. Love*, 92 S.W.3d 450, 453 (Tex.2002). If the plaintiff meets the burden of proof that the Dram Shop Act imposes, and the provider is unable to establish a server-training defense, then the provider is liable "for the actions of [its] customer[ ]." Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3, 1987 Tex. Gen. Laws 1673, 1674 (amended 2003) (current version at TEX. ALCO. BEV.CODE § 2.03).

Chapter 33 of the Texas Civil Practice and Remedies Code governs the apportionment of responsibility and applies to "any cause of action based on tort in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought." Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.05, 1987 Tex. Gen. Laws 37, 41 (amended 2003) (current version at TEX. CIV. PRAC. & REM.CODE § 33.002). Section 33.003 provides that the trier of fact shall apportion responsibility "with respect to each person's causing or contributing to cause in any way the harm for which recovery of damages is sought." Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.06, 1987 Tex. Gen. Laws 37, 41 (amended 2003) (current version at TEX. ALCO.BEV.CODE § 33.003). Chapter 33 expressly excludes certain types of cases from its coverage, such as workers' compensation cases, *id.* § 33.002(c)(1), but it

---

**3.** In addition to briefing from the parties, we received briefs from several amici, including the Saltgrass Steakhouse Private Club, Inc., Waco Texas Management, Inc., on behalf of Cactus Canyon, Texas Restaurant Association, Texas Petroleum Marketers and Convenience Store Association, and Mothers Against Drunk Driving.

**4.** Although this provision has since been amended, in this opinion, we refer to the version of the statute that governs these proceedings. We treat other code provisions that have been amended similarly.

does not exclude actions brought under the Dram Shop Act.

It is clear from Chapter 33's language that the Legislature intended all causes of action based on tort, unless expressly excluded, to be subject to apportionment. The statute was similarly plain when we decided in *Sewell*, 858 S.W.2d at 356, that Chapter 33 applied to claims brought under the Dram Shop Act. When *Sewell* was decided, Chapter 33 provided that it applied "[i]n an action to recover damages for negligence ... or an action for products liability grounded in negligence." Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.04, 1987 Tex. Gen. Laws 37, 40 (amended 1995) (current version at TEX. CIV. PRAC. & REM.CODE § 33.001(a)). We concluded that the statute applied because the essential elements of a dram-shop action replicated those of a negligence claim. *Sewell*, 858 S.W.2d at 355–56. Since *Sewell*, the Legislature has amended Chapter 33's applicability provision to encompass "any cause of action based on tort." TEX. CIV. PRAC. & REM.CODE § 33.002. If anything, that change indicates the Legislature intended a broader application, since the term would include non-negligent tortious conduct.

The court of appeals held that *Sewell* did not apply in cases like this one because the Dram Shop Act imposes vicarious liability on F.F.P. for Ruiz's actions; thus, as between F.F.P. and the Dueñezes, there is nothing to apportion. 69 S.W.3d at 806. The court noted that vicarious liability is "problematic" in first-party suits because allowing an intoxicated patron to impose vicarious liability on a provider without regard to the patron's own conduct would be "unpalatable." *Id.* It was a desire to avoid this result, the court of appeals reasoned, that fueled our *Sewell* analysis, as evidenced by our statement that the decision was based on "the limited circum-

stances present in this cause...." *Sewell*, 858 S.W.2d at 356.

It is true, though hardly remarkable, that we based our holding in *Sewell* on the facts presented, and those facts presented a first-party claim. But our holding was more broadly stated: "[T]he Comparative Responsibility Act—Chapter 33 of the Texas Civil Practice and Remedies Code—is *applicable to Chapter 2 [dram shop] causes of action." Id.* at 351 (emphasis added). Nowhere did we create an exception for third-party claims. The statute's plain language leaves no doubt that Chapter 33 applies to all claims brought under the Dram Shop Act. Moreover, the nature of the liability that the Dram Shop Act imposes on a provider does not render the proportionate responsibility statute meaningless, nor does Chapter 33's application undermine the Dram Shop Act's effect.

Causation under the Dram Shop Act is tied to the patron's intoxication rather than the provider's conduct. *See Borneman v. Steak & Ale of Tex., Inc.*, 22 S.W.3d 411, 413 (Tex.2000). Because the Act imposes liability on providers "for the actions of their customers" regardless of whether the provider's conduct actually caused the injuries suffered, the court of appeals in this case concluded that the provider's liability is purely vicarious. 69 S.W.3d at 805–06. Under the court's analysis, the provider and the intoxicated patron are one and the same, like the employer and employee in a case founded upon the doctrine of *respondeat superior. Id.*

It is true that, if a provider's liability under the Dram Shop Act were purely vicarious, as the court of appeals held, there would be nothing for the jury to apportion between F.F.P. and the Dueñezes in this case. But the Act has a direct liability component that the court of appeals wholly ignored. Unlike true vicar-

ious liability, in which one party's actionable conduct is imputed to another, a dram shop's liability stems in part from its own wrongful conduct. *See Sewell*, 858 S.W.2d at 355; KEETON ET AL., PROSSER & KEETON ON TORTS § 69, at 499 (5th ed.1984). In order to impose liability under the Act, the factfinder must conclude that the provider made alcohol available to an obviously intoxicated patron whose intoxication caused the plaintiff harm. TEX. ALCO.BEV.CODE § 2.02(b). As we said in *Sewell*, "liability under [the Dram Shop Act] is premised on the conduct of the provider of the alcoholic beverages—not the conduct of the recipient or a third party." 858 S.W.2d at 355. Accordingly, the dram shop's liability is based on its own wrongful or dangerous conduct even though the statutorily required causal link focuses on the patron's intoxication. TEX. ALCO.BEV.CODE § 2.02(b).

That a provider's liability under the Dram Shop Act has a derivative component does not make it antithetical to proportionate responsibility. Under Chapter 33, the trier of fact must apportion the percentage of responsibility attributable to each of the persons who "caus[ed] or contribut[ed] to cause in any way" the harm suffered. TEX. CIV. PRAC. & REM.CODE § 33.003. Although the Act ties causation to the intoxicated patron's actions, certainly dram-shop liability was fashioned on the notion that providing alcohol to one who is obviously intoxicated to the extent that the public is clearly endangered "contributes [in some] way" to harm that the intoxication causes. *Id.; see Sewell*, 858 S.W.2d at 356.

The Dueñezes contend that allowing F.F.P. to avoid its statutory liability by shifting responsibility onto its intoxicated customer will undermine the legislative policy choice to deter the sale of alcohol to obviously intoxicated persons and the Leg-islature's "recogni[tion] that providers of alcoholic beverages owe a duty to those who may be injured due to the consumption of those alcoholic beverages." *Sewell*, 858 S.W.2d at 354. We agree that the Legislature did not intend for an innocent third party to bear the risk of an intoxicated patron's insolvency when a provider has breached the duty that the Act imposes. But applying Chapter 33 to a dram-shop liability scheme that partially imputes causation does not thwart the Legislature's purpose. As one commentator has noted:

> Comparative negligence, in and of itself, has not changed these basic principles [of imputed negligence]. When negligence is apportioned in the presence of vicarious liability, the master bears the burden of his servant's negligence. If the master has been partially at fault, the percentage of negligence attributed to the servant is added to the percentage attributed to the master.

SCHWARTZ, COMPARATIVE NEGLIGENCE § 16.1 (2d ed.1986) (emphasis added) (citations omitted). Thus, while the dram shop is entitled to seek recovery from an intoxicated patron to the extent causation is imputed, rather than direct, the dram shop is liable to injured third parties for both its own actions and for its patron's share of responsibility.

This construct comports with the rule stated in section 13 of the Restatement of Apportionment of Liability that "[a] person whose liability is imputed based on the tortious acts of another is liable for the entire share of comparative responsibility assigned to the other...." RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 13 (2000). While section 13 refers to the situation in which a party is held vicariously liable solely on the basis of another's conduct, the Restatement makes clear that a party to whom liability is imputed and who is also independently liable "is respon-

sible for the share of the verdict assigned to [the party whose liability is imputed] and is also responsible for the share of the verdict assigned to its own negligence." *Id.* § 7 cmt. j (2000).

We conclude that, when the factfinder determines that a provider has violated the Dram Shop Act and its patron's intoxication has caused a third party harm, responsibility must be apportioned between the dram shop and the intoxicated patron, as well as the injured third party if there is evidence of contributory negligence. The resulting judgment should aggregate the dram shop's and driver's liability so that the plaintiff fully recovers from the provider without assuming the risk of the driver's insolvency. The dram shop may then recover from the driver based upon the percentages of responsibility that the jury assessed between them.

In reaching this conclusion, we pay heed to the principle that courts should, if possible, construe statutes to harmonize with each other. *La Sara Grain Co. v. First Nat'l Bank of Mercedes,* 673 S.W.2d 558, 565 (Tex.1984) (citing *State v. Standard Oil Co.,* 130 Tex. 313, 107 S.W.2d 550 (Tex.1937)). In enacting the Dram Shop Act, the Legislature sought to protect innocent members of the public from the dangers intoxicated individuals pose by placing some responsibility for injury on those who sell alcoholic beverages. *Sewell,* 858 S.W.2d at 356. That is why the Act speaks in terms of "[t]he liability of providers under this chapter for the actions of their customers, members, or guests who are or become intoxicated...." TEX. ALCO. BEV.CODE § 2.03. As the Iowa Supreme Court has postulated, juries in dram shop cases are likely to assign most, if not all, of the responsibility for third parties' injuries to the intoxicated patron. *See Slager v. HWA Corp.,* 435 N.W.2d 349, 357 (Iowa 1989). If the provider who

serves a clearly intoxicated patron does not bear responsibility for injuries caused by the patron's intoxication, the remedy the Legislature provided in the Dram Shop Act would be meaningless, at least to the extent the intoxicated patron proves to be insolvent, hardly a result that the Legislature likely contemplated in substituting dram-shop liability for otherwise available common-law remedies.

Moreover, the Legislature has directed that, in construing statutes, we must consider the object sought to be obtained and the consequences of a particular construction. CODE CONSTRUCTION ACT, TEX. GOV'T CODE §§ 311.023(1), (5); *see* TEX. ALCO. BEV.CODE § 1.02 (expressly incorporating the Code Construction Act). The Legislature has further instructed courts to liberally construe the Alcoholic Beverage Code so that the safety and welfare of our citizens are protected. TEX. ALCO. BEV. CODE § 1.03. Rather than undermine the Legislature's purpose in enacting the Dram Shop Act, we give effect to both it and the Proportionate Responsibility Act.

In contrast, the dissent gives no weight to section 2.03(a) of the Dram Shop Act, concluding it "means only that a cause of action for damages caused by an intoxicated patron is the exclusive remedy against an alcohol provider." (OWEN, J., dissenting). But if that had been the statutory purpose, section 2.03(a) would have simply said:

> The liability of providers under this chapter is in lieu of common law or other statutory law warranties and duties of providers of alcoholic beverages.

Instead, subsection (a) clearly says:

> [t]he liability of providers under this chapter *for the actions of their employees, customers, members, or guests who are or become intoxicated* is in lieu of common law or other statutory law war-

ranties and duties of providers of alcoholic beverages.

TEX. ALCO. BEV.CODE § 2.03(a) (emphasis added). The dissent's construction of the statute violates the fundamental rule that we are to give effect to "every sentence, clause, and word of a statute so that no part thereof [will] be rendered superfluous." *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex.2003) (quoting *Spence v. Fenchler*, 107 Tex. 443, 180 S.W. 597, 601 (1915)).

Finally, the dissent's discussion of the Legislature's imposition of strict liability on illegal methamphetamine manufacturers and other criminal actors improperly presumes that we are similarly exempting alcohol providers from the proportionate responsibility scheme. Clearly we are not. Instead, we apply that scheme consistent with the Dram Shop Act's language and purpose. Our interpretation gives effect to both the Dram Shop Act's express language and the statutory proportionate responsibility scheme. Even the dissent acknowledges that our decision "may express sound public policy." (OWEN, J., dissenting). That is exactly the public policy we believe the Legislature chose when it crafted section 2.03(a).

We conclude that the court of appeals erred in holding that the proportionate responsibility statute does not apply to third-party actions under the Dram Shop Act. The judgment is correct, though, because F.F.P. is responsible to the Dueñezes for its own liability and that of Ruiz, from whom F.F.P. may recover to the extent of his imputed liability. We must now decide whether the trial court erred in severing F.F.P.'s claim against Ruiz.

### III

The trial court severed F.F.P.'s claim against Ruiz and proceeded to trial with F.F.P. as the only defendant. The court of appeals affirmed the trial court's severance order, concluding that a vicariously liable party's right of recovery against a tortfeasor is through indemnity, which does not become actionable until an adverse judgment is taken. 69 S.W.3d at 807–08. Because the court considered F.F.P.'s liability vicarious in nature, it also held that Ruiz did not meet Chapter 33's definition of a responsible third party for apportionment purposes. *Id.*

As already explained, F.F.P.'s dramshop liability is not purely vicarious; therefore the trial court should have submitted Ruiz's percentage of responsibility to the jury for apportionment under Chapter 33. But because F.F.P. is responsible to the Dueñezes for its own percentage of liability and that of Ruiz, and because there is nothing that would prevent a jury from fairly apportioning responsibility between F.F.P. and Ruiz in the severed action, the trial court's severance order did not constitute reversible error.

### IV

Finally, F.F.P. contends the trial court erred in refusing to instruct the jury on sole proximate cause. F.F.P. bases its claimed entitlement to that instruction on evidence that Ruiz was reaching under the seat for a compact disc when the accident occurred, and it was this inattention rather than Ruiz's intoxication that caused the accident. The Dueñezes respond that the instruction F.F.P. requested did not preserve this argument. We agree.

F.F.P.'s requested instruction stated: "if an act or omission of any person not a party to the suit was the 'sole proximate cause' of an occurrence, then no act or omission of any other person could have been a proximate cause." The proposed submission merely instructs that if a nonparty's action was the sole proximate cause of the Dueñezes' injury, then no other

person's action could be a proximate cause. The instruction thus asks the jury to compare the actions of two different people rather than distinguish between the same person's intoxication and inattention. The requested instruction would not have focused the jury's attention on the act that F.F.P. contends was the sole proximate cause of the Dueñezes' injuries; thus, the trial court did not err in refusing to submit it. *See Hyundai Motor Co. v. Rodriguez,* 995 S.W.2d 661, 665–66 (Tex.2002).

## V

For the foregoing reasons, the court of appeals' judgment is affirmed.