Opinion filed May 22, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed May 22, 2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-06-00236-CV 

                                                     __________

 

                  LINDA
SHEFFIELD AND CALVIN RISTER, Appellants

 

                                                             V.

 

                        JAN
MICHAEL DRAKE, DAVID BANDY, AND

       BRECKENRIDGE
INDEPENDENT GROCERS ALLIANCE, Appellees

 



 

                                          On
Appeal from the 90th District Court 

 

                                                       Stephens
County, Texas

 

                                                  Trial
Court Cause No. 28,820A

 



 

                                                                   O
P I N I O N








Linda
Sheffield, individually and as administratrix of the estate of Cody Jayton
Rister, and Calvin Rister filed suit against Jan Begeman, Brent Begeman, Steve
Begeman, Jan Michael Drake, Breckenridge Independent Grocers Alliance (IGA),
David Bandy, Mark Begeman, and Stephanie Begeman,[1]
seeking survival and wrongful death damages arising from Jayton=s death in a motor vehicle
accident.  IGA, Bandy, and Drake filed motions for summary judgment.  The trial
court granted their motions and severed them from the lawsuit.  We affirm.

                                                              I.
Background Facts

Brent
was a college student.  He came home to Breckenridge for the weekend.  Brent
and Jayton were friends.  Brent, Jayton, Drake, Brian Means, and Olie Hedge met
at the IGA grocery store parking lot Friday afternoon.  Brent=s brother, Mark, was an IGA
floor manager.  Brent and his friends pitched in to buy beer.  Drake, Brian,
and Jayton were sixteen years old; Olie was seventeen; and Brent was eighteen. 
Brent went inside the IGA but did not come back with any beer.  Instead, he got
beer from Mark=s wife,
Stephanie, at her house.

That
night, people came to Brent=s
home for an informal party.  Besides Brent, two other people brought beer. 
Neither of these were employed by IGA.  However, an IGA employee, Beatrice
Skaggs, provided a statement contending that IGA may have been indirectly
involved in supplying the beer.  Skaggs did not work the day of the accident
but two days later heard an employee say that she had sold beer to Mark for the
purpose of providing it to Brent for his party.  The employee also said that,
after the accident, Bandy (IGA=s
owner) told her, Mark, and Brent not to talk to anyone about the incident. 
Skaggs also claimed that IGA employees sold alcohol to minors on two other
occasions during her one and one-half years of employment.

Brent
started drinking at 8 or 9 p.m.  Around 11 p.m., he and Jayton left the party
in Brent=s pickup and
drove to McDonald=s. 
They got something to eat and returned to Brent=s
house.  After midnight, they left in Drake=s
pickup.  Drake was in the house either asleep or passed out.  Jayton got Drake=s keys and was driving when
they left the house.

Brent
and Jayton were involved in a one-vehicle accident.  Jayton was killed.  Brent
admitted to an investigating officer at the scene that he was driving.  The
police also interviewed Drake that night.  He told them that he had passed out
somewhere between ten and eleven o=clock. 
He denied giving anyone permission to take his pickup and said that someone
must have taken the keys out of his pocket while he was asleep.








Sheffield
filed suit and alleged that Brent negligently drove while intoxicated, that
Bandy and IGA were providers of alcoholic beverages, that they provided alcohol
to minors including Jayton,  that Drake negligently entrusted his vehicle to
Brent knowing that he was or would become intoxicated or, alternatively, if
Jayton was driving, then Drake was negligent for permitting him to drive
knowing that Jayton was or would become intoxicated.

Bandy
and IGA filed a no-evidence motion for summary judgment.  They argued that the
Texas Dram Shop Act[2] was Sheffield=s exclusive remedy and
contended that Sheffield had failed to state a cause of action under the Act. 
Bandy and IGA also filed a separate traditional motion for summary judgment and
argued that as a matter of law they did not violate the Dram Shop Act because
they did not sell any alcohol to an obviously intoxicated person or knowingly
sell to a minor.  Drake filed a combination no-evidence and traditional motion
for summary judgment.  Drake argued that, as a matter of law, he did not
entrust his vehicle to Brent and that Sheffield had no evidence on several
elements of a negligent entrustment cause of action.  The trial court granted
both no-evidence motions.

                                                               II.
Issues on Appeal

Sheffield
challenges the trial court=s
decision to grant both motions for summary judgment.  Bandy and IGA assert a
cross-point conditionally complaining of the trial court=s refusal to grant their traditional motion
for summary judgment.

                                                            III.
Standard of Review

We
will apply the well‑recognized standards of review for summary
judgments.  No‑evidence motions are reviewed under the same standard as a
directed verdict.  King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750‑51
(Tex. 2003). Accordingly, we review the evidence in the light most favorable to
the nonmovant and disregard all contrary evidence and inferences.  Id. 
A trial court must grant a proper no‑evidence motion for summary judgment
unless the nonmovant produces more than a scintilla of probative evidence to
raise a genuine issue of material fact on the challenged element of the claim. 
Tex. R. Civ. P. 166a(i).








For
traditional motions, questions of law are reviewed de novo.  St. Paul Ins.
Co. v. Tex. Dep=t
of Transp., 999 S.W.2d 881 (Tex. App.CAustin
1999, pet. denied).  To determine if a fact question exists, we must consider
whether reasonable and fair‑minded jurors could differ in their
conclusions in light of all the evidence presented.  Goodyear Tire &
Rubber Co. v. Mayes, 236 S.W.3d 754, 755 (Tex. 2007).  We must consider all
the evidence in the light most favorable to the nonmovant, indulging all
reasonable inferences in favor of the nonmovant, and determine whether the
movant proved that there were no genuine issues of material fact and that it
was entitled to judgment as a matter of law.  City of Houston v. Clear Creek
Basin Auth., 589 S.W.2d 671 (Tex. 1979).

                                                                     IV.
Analysis

A.
IGA and Bandy.

Sheffield
argues that the trial court erred by granting IGA and Bandy=s no-evidence motion
because the Dram Shop Act does not preclude a common-law cause of action for
providing alcohol to minors under the age of eighteen who drive while
intoxicated.  IGA and Bandy respond that summary judgment was proper because
their liability is limited by the Dram Shop Act, because there is no evidence
that either violated the Act, and because there is no evidence of proximate
cause.

 The
Act creates a statutory cause of
action for:

Providing,
selling, or serving an alcoholic beverage . . . upon proof that:

 

(1)
at the time the provision occurred it was apparent to the provider that the
individual being sold, served, or provided with an alcoholic beverage was
obviously intoxicated to the extent that he presented a clear danger to himself
and others; and

 

(2)
the intoxication of the recipient of the alcoholic beverage was a proximate
cause of the damages suffered.[3]

 

AProvider@ is defined as Aa person who sells or
serves an alcoholic beverage under authority of a license or permit issued
under the terms of this code or who otherwise sells an alcoholic beverage to an
individual,@ and Aprovision@ is defined to include Athe sale or service of an
alcoholic beverage.@[4] 
The Act contains an exclusivity provision, Section 2.03, which provides:

(a)
The liability of providers under this chapter for the actions of their
employees, customers, members, or guests who are or become intoxicated is in
lieu of common law or other statutory law warranties and duties of providers of
alcoholic beverages.








(b)
This chapter does not impose obligations on a provider of alcoholic beverages
other than those expressly stated in this chapter. 

 

(c)
This chapter provides the exclusive cause of action for providing an alcoholic
beverage to a person 18 years of age or older.

 

Sheffield argues
that Section 2.03 does not apply because Jayton was sixteen and subsection (c)
is specifically limited to persons eighteen or older.  It is unnecessary for us
to resolve this question because, even if the exclusivity provision does not
apply, Sheffield produced insufficient evidence to overcome a no-evidence
motion for summary judgment.

Sheffield=s argument necessarily
requires proof that Jayton was driving while intoxicated when the accident
occurred.  If Brent was driving, then the exclusivity provision applies since
he was eighteen.  If the exclusivity provision applies, summary judgment was
proper because Sheffield has no evidence that Brent was obviously intoxicated
when he received the beer from Stephanie.  Brent admitted to the investigating
officer that he was the driver.  To overcome this admission, Sheffield points
to Bandy and IGA=s
answer where they included an affirmative defense that Jayton caused the
accident by driving while intoxicated.  However, Bandy and IGA also pleaded
that Brent caused the accident by driving while intoxicated.  We note that
Sheffield made similar alternative allegations. Sheffield originally contended
that Brent was the driver.  Sheffield=s
second amended petition retained this allegation but added an alternative
allegation that, if Jayton was driving, then Drake was negligent for allowing
him to drive.

Pleadings
are ordinarily not considered competent summary judgment evidence.  Laidlaw
Waste Sys. (Dallas), Inc. v. City of Wilmer, 904 S.W.2d 656, 660 (Tex.
1995).  An exception exists for judicial admissions in an opponent=s pleadings.  Lyons v.
Lindsey Morden Claims Mgmt., Inc., 985 S.W.2d 86, 92 (Tex. App.CEl Paso 1998, no pet.) (if
a party=s pleadings
contain judicial admissions negating a cause of action, summary judgment may be
granted on the basis of those pleadings).  This exception is not applicable. 
Bandy and IGA=s answer
does not constitute a judicial admission that either Brent or Jayton was
driving but merely asserts alternative affirmative defenses that the accident
was proximately caused by the negligence of whomever was driving.  Because
Sheffield produced no evidence that Jayton was driving when the accident
occurred, the trial court did not err by granting Bandy and IGA=s no-evidence motion for
summary judgment.








Even
if we assume that a fact question exists on the driver=s identity, there was no evidence that IGA or
Bandy provided Jayton with any alcohol.  Sheffield does not contend that Jayton
acquired beer from IGA directly but argues that a civil conspiracy existed to
provide minors with alcohol.  The elements of a civil conspiracy claim are (1)
two or more persons, (2) an object to be accomplished, (3) a meeting of the
minds on the object or course of action, (4) one or more unlawful, overt acts,
and (5) damages as the proximate result.  Massey v. Armco Steel Co., 652
S.W.2d 932, 934 (Tex. 1983).  Sheffield contends that Brent and Stephanie
conspired to provide alcohol to minors; that Mark was tied to their conspiracy;
and that, because Mark was an IGA floor manager, IGA and Bandy were vicariously
responsible.

It
is undisputed that Brent obtained beer from Stephanie, that he took the beer to
his house, and that Jayton drank at least one of Brent=s beers.  To what extent this is evidence of
an agreement between Brent and Stephanie or Mark we need not decide today
because the question is whether Bandy and IGA conspired to provide
alcohol to minors.  The only evidence that IGA or Bandy were principals in a
conspiracy was Skaggs=s
affidavit where she stated:

In
August, 2003, I was employed by Breckenridge Independent Grocers Alliance
(Breckenridge Breckenridge [sic] IGA) located at 1208 West Walker, Breckenridge,
Texas, and worked under the supervision of its owner, David Bandy.  I was off
work on Friday, August 29, 2003.  On the following Monday, September 1,
2003, I was working in the customer service booth at the store, within
approximately three feet of my co-worker, Michelle Whitfield Heatley, and I
overheard Michelle Heatley talking to a group of people, who I did not know. 
She told them that she had sold beer to the Breckenridge IGA Floor Manager,
Mark Begeman, on Friday, August 29, 2003, during regular business hours, for
the purpose of providing the alcohol to his underage brother, Brent Begeman, to
be drank at a party at the residence of Steve Begeman, Jan Begeman, and Brent
Begeman, which was the party later attended by Cody Jayton Rister prior to his
death.  Michelle Heatley was working the booth of another employee who was on
break on the Friday of August 29, 2003, and stated that because Mark Begeman
was an employee, she checked him out when he purchased the beer.  She further
stated, within my presence and hearing, that she, Mark Begemen and Brent
Begeman had been called into a meeting by the owner of the store, David Bandy,
regarding the sale of the beer to Mark Begeman and had been told that they were
not allowed to talk to anyone about the incident.

 








Assuming without
deciding that Mark or Michelle Heatley=s
knowledge is imputed to IGA and Bandy, this is some evidence that IGA sold beer
to Mark knowing that Brent would ultimately take it to a party.  It is no
evidence that IGA or Bandy knew who would be at the party or who would consume
any of Brent=s beer.

Sheffield
directs our attention to Skaggs=s
testimony that, after the accident, Bandy told Mark and Brent not to talk to
anyone about the incident.  Sheffield argues that Bandy engaged in a cover-up
and, therefore, that a fact question exists on whether he ratified Mark=s actions.  ARatification is the
affirmance by a person of a prior act which when performed did not bind him,
but which was professedly done on his account, whereby the act is given effect
as if originally authorized by him.@
Disney Enters., Inc. v. Espirit Fin., Inc., 981 S.W.2d 25, 31 (Tex. App.CSan Antonio 1998, pet. dism=d w.o.j.).  Skaggs=s affidavit testimony may
be evidence of improper behavior, but it does not show that Bandy ratified Mark=s personal conduct. 
Sheffield also directs our attention to Skaggs=s
testimony that, on two other occasions, IGA employees sold alcohol to minors. 
This conclusory allegation is no evidence of an agreement to provide alcohol to
minors on this occasion. 

Sheffield=s theory of liability
would, in essence, make IGA strictly liable in this situation because it would
extend IGA=s liability
beyond its control.  Once Mark purchased the beer and took it home, IGA and
Bandy had no further control over it.  They never had control over Stephanie or
Brent.  This lack of control precludes the imposition of vicarious liability.  See
F.F.P. Operating Partners v. Duenez, 237 S.W.3d 680, 686 (Tex. 2007).

Even
at common law, alcohol providers have not been held to such a standard.  The
historical rule was that alcohol providers owed no duty to third persons for
injuries caused by the provision of alcohol.  Smith v. Sewell, 858
S.W.2d 350, 352 (Tex. 1993).  In 1987, the Texas Supreme Court altered the
absolute rule of no liability to create a duty on dram shops to not serve
alcoholic beverages to a person it knows or should know is intoxicated.  El
Chico Corp. v. Poole, 732 S.W.2d 306, 310 (Tex. 1987).[5] 
Although the supreme court recognized a new duty, it is important to note that
the duty was measured at the time of sale when the provider had control and
that this duty did not impose responsibility for the consequences of future
actions beyond the provider=s
control.








Jayton=s consumption of alcohol is
too remote from Bandy and IGA=s
actions to impose liability.  The mere fact that an IGA employee purchased beer
from the store and gave the beer to his wife who then gave the beer to her
brother-in-law who then shared the beer with his friends, one of whom
subsequently drove while intoxicated, does not make Bandy or IGA liable as a
provider.  Sheffield=s
first issue is overruled.  This holding makes it unnecessary for us to reach
Bandy and IGA=s
cross-issue.

B.
Drake.

In
his second issue, Sheffield contends that the trial court erred by granting Drake=s no-evidence motion for
summary judgment because sufficient summary judgment evidence exists that Drake
entrusted his vehicle to Brent.  The elements of a negligent entrustment cause
of action are (1) the owner entrusted a vehicle (2) to an unlicensed,
incompetent, or reckless driver; (3) the owner knew or should have known that
the driver was unlicensed, incompetent, or reckless; (4) the driver was
negligent on the occasion in question; and (5) the driver=s negligence proximately
caused the accident.  Newkumet v. Allen, 230 S.W.3d 518, 522 (Tex. App.CEastland 2007, no pet.).

There
was evidence that Drake allowed Brent and Jayton to drive his vehicle earlier
that day.  It is undisputed that Drake was involved in the acquisition of beer
for the party, that he drank enough beer himself to lose consciousness at 10:30
or 11:00 p.m., that Jayton got Drake=s
keys, and that he and Brent left the house after midnight.  Drake directs our
attention to testimony from himself and Brent affirmatively establishing that
Drake did not want anyone driving his vehicle after the party started, but
because this is a no-evidence summary judgment review, we must confine
ourselves to a review of the evidence in the light most favorable to
Sheffield.  King Ranch, 118 S.W.3d at 750-51.








The
mere fact that Brent or Jayton drove Drake=s
pickup earlier in the day before the party started and while accompanied by
Drake is no evidence that Jayton had broader authority to drive Drake=s vehicle after the party
started or while Drake was asleep.  See Vaughn v. Watkins, 344 S.W.2d
902 (Tex. Civ. App.CEastland
1961, writ ref=d
n.r.e.) (employee who drove company pickup on several occasions for personal
and business reasons did not have permission to drive it at the time of the
accident).  Sheffield directs us to Brent=s
testimony that he would never steal a vehicle and that he never
heard Drake say, A[D]on=t drive my vehicle.@  Because it was Jayton and
not Brent that obtained the keys, this does not establish that Jayton had Drake=s consent.  Summary
judgment, therefore, was appropriate because there was no evidence of
entrustment.  Sheffield=s
second issue is overruled.

                                                                     IV.
Holding

The
judgment of the trial court is affirmed.

 

 

RICK STRANGE

JUSTICE

 

May 22, 2008

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]We will refer to the plaintiffs collectively as
Sheffield, the decedent as Jayton, and the Begemans by first name.





[2]Tex. Alco. Bev. Code Ann. '' 2.01-.03 (Vernon 2007).





[3]Section 2.02(b).





[4]Section 2.01.





[5]This duty was short-lived.  The Dram Shop Act became
effective a week after Poole was issued.  F.F.P. Operating, 237
S.W.3d at 684.